UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  08-21352-CIV-UNGARO/SIMONTON
<u>CONSENT CASE</u>

ANDRES VARGAS RODILLA; ROBERTO )
CHAMORRO; RICARDO LOZO; )
GUILLERMO SALA; JULIO ABREU, )
MANUEL PEREIRA, MARIA E. GIRALDO, )
JOSE JIMENEZ, OMAR CANO, JOEL )
RODRIGUEZ, WILLIAM EDGARDO )
LANDIETA, MARIA CAROLINA MARTIN )
and all others similarly situated under 29 USC )
216(B) )

    Plaintiffs,

  vs.

TFC-RB, LLC
MICHAEL DAWSON
    Defendants
_____

**PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT**

COME NOW the Plaintiffs, through undersigned counsel, and state as follows:

**INTRODUCTION**

1. This matter sounds under the Fair Labor Standards Act ("FLSA").

2. In addition to the FLSA wage violations, Plaintiff Manuel Pereira has brought an action for retaliatory discharge.

3. Trial is scheduled to commence 11/9/09.

4. Plaintiffs move for summary judgment and ask the Court to find that: A) FLSA coverage/subject-matter jurisdiction exists; B) individual liability is present as to Defendant Michael Dawson under the FLSA; C) Plaintiffs were Defendants' employee and not an independent contractors; D)

1

>Defendants are liable as a matter of law for at least some overtime violations and liquidated damages should therefore be imposed as a matter of law (thus the jury only need determine damages as to the wage claims and the Court should double the damage determination); E) Manuel Pereira's claim for retaliatory discharge shall proceed to trial.

5. Summary Judgment should be granted as set forth below.

## MEMORANDUM OF LAW

A. **SUMMARY JUDGMENT STANDARD.**

Pursuant to Fed.R.Civ.P. 56, a summary judgment should be granted if, following sufficient discovery, there is no genuine issue of material fact to be decided by a jury; therefore summary judgment is to be granted as a matter of law. *Hoffman v. Allied Corp., et al.,* 912 F.2d 1379, 1383-84 (11th Cir. 1990), *citing, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining if a genuine issue exists, the court must query whether "a reasonable jury could return a verdict for the nonmoving party…." *Hoffman v. Allied Corp., et al.,* 912 F.2d at 1383. *See also, Beal v. Paramount Pictures Corporation*, 20 F.3d 454, 459 (11th Cir. 1994)("Summary Judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law"); *Silas v. Hillsborough County*, 2006 U.S. Dist. LEXIS 79503, *3-4 (M.D. Fla. 2006)(in FLSA matter court found "[s]ummary judgment is proper if following discovery … there is no genuine issue as to any material fact….").

B. **FLSA COVERAGE (I.E. SUBJECT MATTER JURISDICTION) EXISTS IN THE PRESENT CASE**

29 U.S.C. 203(s)(1) defines "enterprise" coverage as an enterprise that has employees "handling, selling, or otherwise working on goods or materials that have been

2

moved in or produced for commerce by any person and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000."

As stated in *Galdames v. N & D Inv. Corp.*, 2008 U.S. Dist. LEXIS 73433 (S.D. Fla. 2008):

> "It is notable how many courts in the past three-and-a-half decades have concluded that virtually any enterprise that meets the statutory annual gross sales requirement is subject to the FLSA. *See, e.g., Dunlop v. Indust. America Corp.*, 516 F.2d 498, 500-02 (5th Cir. 1975) 6 (referring to the 1961 expansion, and noting "[t]his change extended coverage to businesses with employees engaged in handling or utilizing goods after they had ceased the interstate portion of their movement. This approach reached those nearer the end of the chain of distribution, e. g., retail and service establishments whose businesses were otherwise local in character."); *Archie v. Grand Cent. Partnership, Inc.*, 997 F.Supp. 504, 530 (S.D.N.Y. 1998) ("The bill also adds the word 'or materials' after the word 'goods' to make clear the Congressional intent to include within this additional basis of coverage the handling of goods consumed in the employer's business, as, e.g., the soap used by a laundry. . . . Since 1974, courts facing the issue presented here have unanimously come to the same conclusion: local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce."); *Dole v. Bishop*, 740 F. Supp. 1221, 1225-26 (S.D.Miss.1990) ("[P]ursuant to a 1974 amendment, . . . in order for an enterprise to be engaged in commerce, it must have employees 'handling, selling, or otherwise working on goods or materials' that have moved in interstate commerce. This amendment adding the words 'or materials' leads to the result that virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA.") (internal citation and emphasis omitted); ***Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.*, No. 8:07-cv-2359-T-23TGW, 2008 U.S. Dist. LEXIS 23007, 2008 WL 793660, at *1 (M.D.Fla. Mar. 24, 2008**) ("[E]nterprise coverage embraces virtually every business whose annual gross volume of sales or business is $ 500,000 or more . . . .")"

> " Because enterprise coverage embraces virtually every business whose annual gross volume of sales or business is $ 500,000 or more,  "the most salient element of an 'enterprise' allegation will be the amount of business a defendant does." <u>Farrell v. Pike,</u> 342 F. Supp. 2d 433, 439 (M.D.N.C. 2004). Cited *by Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.,* 2008 U.S. Dist. LEXIS 23007 (M.D. Fla. 2008).

3

Under the Old Fifth Circuit case of *Brennan v. Greene's Propane Gas Service, Inc. et al.*, 479 F.2d 1027, 1031 (5th Cir. 1973), *citing Wirtz v. Melos Construction Corp*, 408 F.2d 626, 629 (2nd Cir. 1969): "It is immaterial … that the goods may have 'come to rest' … before they are handled, sold or otherwise worked on by the employees in the enterprise." Thus the "commerce" prong under enterprise coverage is met when the goods are handled by the employees by virtue of the fact that the goods merely "moved across State lines at any time in the course of business, such as from the manufacturer to the distributor." *Id*.  "There is no requirement of continuity" when the $500,000 monetary threshold is reached.[1]

There is no "continuity" requirement that the goods continue to flow in interstate commerce before reaching the plaintiff-employees who handle such goods in the performance of their duties. The interstate commerce standard is so liberal in fact, that the goods that moved at some time in interstate commerce need not even be in the same "form"(for example raw materials such as out of state cement refined to ready-mix concrete) when used by a plaintiff-employee during the course of employment. *See, Id* at 1031, *citing Melos Construction Corp. supra,* and *Schultz v. Kip's Big Boy*, 431 F.2d 530 (5th Cir. 1970).

To further exemplify the expansive applicability of interstate commerce when the $500,000 monetary threshold is satisfied, this Court should find that "[t]he term 'materials' is neither burdened nor restricted with the 'ultimate consumer' exemption found in the 'goods' definition." *Marshall v. Davis, et al.*, 526 F. Supp. 325 (M.D. Tenn. 1981). The defendant-employer in *Marshall* therefore had to concede that adding the

---

[1] The current threshold is $500,000, although the threshold was $1,000,000 when the present issue was analyzed by the *Brennan* Court.

term "or materials" to 29 USC 203(s) eliminated any "ultimate consumer" limitations with the "practical effect of expanding coverage of the Fair Labor Standards Act to every enterprise in the nation [that satisfies the monetary threshold, presently $500,000 in the case *sub judice*]." *Id.* at 329-30.  In favor of the plaintiff-employee, the Court found that the Congressional findings served a "sufficiently rational basis for the enactment of the amendments" that permitted significant broadening of the scope of enterprise coverage by adding "or materials" to 29 U.S.C. Section 203(s).  *Id*. at 331.[2]

In addition, the Court should also consider the following recent decisions from the Southern District of Florida: *Exime v. E.W. Ventures, Inc. et al*., 2008 U.S. Dist. LEXIS 103797 (S.D. Fla. 2008) and *Saucedo v. Phoenix Auto Sales, Inc*., 08-21156-CIV-ALTONAGA/BROWN (S.D. Fla. 1/5/09).   In *Saucedo*, the Court in the Southern District of Florida cited the Southern District decision of *Exime* in addressing the issue of employers that utilized materials that previously moved in interstate commerce in light of end-user considerations.  *Saucedo*, 08-21156 at 7.  In citing *Exime*, the Court in *Saucedo* provides an in-depth analysis of the impact of the "or materials" amendment concerned 29.U.S.C. 203's definition of "goods" that included the "ultimate consumer" language. *Id*.   The Court noted the relevant Senate Report's reference to "soap used by a laundry"

---

[2] The impact of the "or materials" amendment concerned 29.U.S.C. 203(i)'s definition of "goods" that included the "ultimate consumer" language.  See, *Marshall,* 526 F. Supp. at 326.  However, the amendment of subsection 203(s)'s definition of "an enterprise engaged in commerce…" that added the "or materials" language (i.e. plaintiff-employees "handling, selling, or otherwise working on **goods or materials** that have been moved in or produced for commerce") caused an apparent schism between 203(i) and 203(s).  In other words, the Court found that there was no need to satisfy the "ultimate consumer" language under the "goods" definition because the plaintiff-employee could simply look to the "or materials" language that did not have an "ultimate consumer" component.  The *Marshall* Court found that the seemingly redundant "or materials" amendment "clarified Congressional intent to broaden the scope of enterprise coverage."

5

with regard to expansion of jurisdiction. Thus, adding the "materials" language broadened FLSA jurisdiction "by substantially constricting" defense arguments based on the ultimate consumer. *Saucedo* at 8, citing *Exime*. Therefore, in *Saucedo*, the court did not require the defendants' used car sales company to actually obtain the cars or sell them directly in interstate commerce. Rather, in *Saucedo* it was sufficient that the defendant handled "automobiles that moved in interstate commerce, even though they had previously reached an ultimate consumer…." *Saucedo* at 11.

Also, attached is very recent copy of an Order Denying Motion for Summary Judgment (DE# 29) in the case of *Diaz v. Jaguar Restaurant Group, LLC et al.,* 08-22317 (S.D. Fla. 6/22/09) in which the Southern District issued an opinion strongly in favor of a flexible approach to interstate commerce when the $500,000 prong is met.. Consequently, there is emerging case law in this District that supports the proposition that, for example, when the $500,000 threshold is met, it is not necessary to show under an enterprise theory that a defendant employer purchased products directly from a supplier located outside the state of Florida with respect to the interstate commerce prong.

However, in the instant case there is such as direct link to interstate commerce as the facts *infra*, as set forth in Plaintiffs' Statement of Material Facts, show Plaintiffs commonly drove vehicles (around the Fort Lauderdale airport to be serviced) that regularly traversed state lines (ex. to or from North Carolina).

During the time the corporate Defendant was in existence according to the Defendants, the $500,000 prong of FLSA coverage has been met. See attached deposition of Defendant Dawson, P5, L6-25.   Such is confirmed for both 2007 and 2008.

Castillo Deposition, P10-11. It is alleged that the named Defendant TFC-RB, LLC was a vehicle used to "pay the people" although another entity may have been used for "invoicing". Castillo Deposition, P10, L18-25. Defendant Dawson controlled that company as well that had a "common business" purpose.[3] Castillo Deposition, P19, L18-25.

Plaintiffs' jobs consisted of driving rental cars (the cars belonged to Defendants' clients such as Budget, Avis, Dollar and Thrifty at the airport) around the airport to be

---

[3] Business activities fall within definition of "enterprise" within 29 USCS § 203(r) where defendant companies are both engaged in laundry business, both are operated and controlled by same individual defendant, and both businesses provide essentially same services to their customers. *Brennan v Patio Cleaners, Inc. (1974, SD Ohio) 373 F Supp 987.* Two closely-held corporations with common shareholders are "enterprise" within meaning of 29 USCS § 203(r) where one corporation produces bakery goods for retail sales in convenience food stores of which second corporation is either owner-operator or franchisor. *Dunlop v Mother Hubbard's Kitchen, Inc. (1976, ED Mo) 418 F Supp 34, 79* CCH LC P 33451. Employer was entitled to summary judgment on employee's claim for overtime under Fair Labor Standards Act (FLSA), 29 USCS § 201 et seq., because employer did not have requisite $ 500,000 in gross receipts and therefore was not subject to FLSA; employer and its parent corporation, even though they were under common control, did not share common business purpose and were not engaged in related activities, and therefore they were not one enterprise under FLSA; parent corporation functioned as holding company for variety of different types of corporations while employer was solely involved in running resort operation. *Nelson v Long Lines Ltd.* (2004, ND Iowa) 335 F Supp 2d 944, 9 BNA WH Cas 2d 1754. Thus, in the instant case the Court ought not entertain any potential attempts by the defense to direct gross income away from the named corporate Defendant. Under enterprise coverage, "related activities conducted by what may be **separate business entities are considered as part of the same enterprise** if they are joined either through common control or unified operation into a unified business system or economic unit to serve a common business purpose." *Brennan v. Patio Cleaners, Inc.*, 373 F.Supp 987, 990 (S.D. Ohio 1974). The term "enterprise" is defined under 29 USC Section 203®(1). Regarding common control and business purpose, *see also, Marshall v. Suicide Prevention of Florida*, 1977 U.S. Dist. LEXIS 14681, *2 (S.D. Fla. 1977). In *Marshall*, the Southern District of Florida (as did *Nelson v. Long Lines Ltd.*, 335 F.Supp.2d 944 (N.D. Iowa 2004), made it clear that the $500,000 prong may be met by stacking the income of business entities as a common enterprise involved in a unified business purpose. *Marshall,* 1977 U.S. Dist. LEXIS 14681, *2. *Marshall* used "a liberal construction of the Act" and found "that the defendants were clearly an enterprise…." *Id.* at *9.

serviced. Dawson Deposition, P14, L1-18; P15. The cars driven by Plaintiffs were "driven around Fort Lauderdale Airport" and sometimes to "Orlando". Castillo Deposition, P14, L17-25, P15, L1.

It is "common" regarding Defendants' client Budget that customers would rent the vehicles outside the state of Florida, ex. "North Carolina", given the deponent's (i.e. Castillo's) knowledge of related "tax". "Budget [was] an important client" of Defendants. Ms. Castillo responded "[y]eah" that it was "common that these vehicles had out of state plates on them". Plaintiffs would drive those cars that commonly traversed state lines. Castillo Deposition, P15, L1-25; P16, L1-25. In addition to Defendants' important client Budget, Castillo believes she also saw out of state plates on Defendants other "important" client "Dollar". Sometimes the customers would "rent the cars here and then drive them to another state." Sometimes they would be rented out of state and be driven here [i.e. into Florida]. The Plaintiffs would then drive them around the airport [to have serviced]. Castillo Deposition, P17, L21-25; P18, L1-25.

The Defendants might attempt to argue that the said direct contact with interstate commerce concerned not the Defendants but rather Defendants' clients (such as Budget and Dollar). However, in *Russel Co. v. McComb*, 187 F.2d 524, 526 (5th Cir. 1951), the Old Fifth Circuit held that guarding premises and property that involved loading of interstate shipments was sufficient to bring a security guard within the ambit of FLSA jurisdiction. Based on various bodies of case law, the Southern District of Florida held similarly with respect to guarding instrumentalities of interstate commerce. *Shultz v. Andy Frain Florida, Inc. et al.*, 1969 U.S. Dist. LEXIS 10645, *5 (S.D. Fla. 1969). *See also*, *Mitchell v. Central Produce Company*, 239 F.2d 377, 379 (6th Cir. 1956)(circuit

8

court reversed lower court, and found that night watchman were included under FLSA pursuant to analysis of case law involving interstate goods coming to rest in a warehouse).[4]

The said security guard cases are directly on point because the Plaintiffs in the case at bar regularly (as their central employment duty) drove instrumentalities of interstate commerce around the airport.  FLSA coverage can be extended to cover security guards vis-à-vis their security company employer, if those security guards are assigned to clients involved in interstate commerce.  It is axiomatic in the instant matter that (2) or more of the Plaintiffs drove the rental cars for Defendants' most important clients (such as Budget and Dollar) and the deponent Castillo clearly references the "Plaintiffs" in the plural concerning her answers to the questions asked.[5]  Those instrumentalities of interstate commerce in the instant case were central to Defendants' enterprise.  Plaintiffs' main duties were to drive those instrumentalities of interstate commerce around the airport to be serviced.

---

[4] As set forth in reply to Defendants' opposition to Plaintiff's motion for enlargement to file the instant Motion, the undersigned firm has appealed the case of *Velasquez v. All Florida Security Corp*, Case No.: 07-23159 cited by the defense in their reply, and has opposed attempts to consolidate *Velasquez* with *Lamonica v. Safe Hurricane Shutters, Inc.*, 578 F.Supp.2d 1363 (S.D. Fla. 2008) etc.) as *Lamonica* is doctrinally distinguishable from *Velasquez*.  Even though *Velasquez* does involve the said security guard case law, *Velasquez* is distinguishable also from the instant case because *Velasquez* involved the guarding of a supermarket that sold goods that were *manufactured* outside the State of Florida—the instant case involves vehicles that are in and of themselves instrumentalities of interstate commerce in the direct sense of the phrase because they regularly crossed state lines.  Although *Velasquez* should be reversed for the reasons set forth in the appellate briefings, the instant matter includes the additional argument that the Plaintiffs constantly handled instrumentalities of interstate commerce that regularly traversed state lines.

[5] The Plaintiffs would then drive them around the airport [to have serviced].   Castillo Deposition, P17, L21-25; P18, L1-25. It would be the "Plaintiffs" job to drive those vehicles around the airport when the cars were brought from out of state.  Castillo Deposition, P18, L17-25.

Moreover, according to the Supreme Court of the United States, maintenance workers can be covered by the FLSA if it can be shown <u>tenants at the building</u> are involved in interstate commerce. *Shulte, Inc. v. Gangi et al.*, 328 U.S. 108, FN 15, 120-121 (1946). *See also, Kirschbaum, Co. v. Walling*, 316 U.S. 517 (1942). Thus, controlling caselaw makes it clear that the interstate commerce prong regarding FLSA coverage can be triggered based on the business of a defendant-employer's clientele.

### C. <u>INDIVIDUAL DEFENDANT MICHAEL DAWSON IS AN FLSA EMPLOYER AND PLAINTIFFS WERE NOT INDEPENDENT CONTRACTORS.</u>

The term "employer" ought be interpreted more broadly under the Act than common law for remedial purposes. *See, e.g., Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2nd Cir. 1999); *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir. 1991), *citing McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989); *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983); *Falk v. Brennan*, 414 U.S. 190, 195 (1973).

Further, multiple employers may be responsible for compliance with the FLSA within one business organization. *See*, *Elliott Travel & Tours, Inc.,* 942 F.2d at 965; *Agnew*, 712 F.2d at 1510. "[B]oth the employing corporation and the individual responsible for operation thereof may be employers for purposes of the FLSA." *Figueroa v. America's Custom Brokers, Inc.,* 48 F.Supp.2d 1372, 1377 (S.D. Fla. 1999), *citing Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986). In the Eleventh Circuit, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel*, 803 F.2d at 637-38, *quoting Agnew*, 712 F.2d at 1511.

Financial control over a corporation is a significant factor in determining "employer" status. *See, Elliot Travel & Tours*, 942 F.2d 966 (6th Cir. 1991); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984)(imposing FLSA liability on a "top man" who guided corporate policies and controlled "purse strings"); *Donovan v. Sabine Irrigation Co., Inc.*, 695 F.2d 190, 193-95 (5th Cir. 1983)(liability for controlling finances and dominating the administration); *Dole v. Simpson*, 784 F.Supp. 538, 545-47 (S.D. Ind. 1991). Liability may also be found even if control is restricted or exercised only occasionally as such does not diminish the significance of the existence of such control. *Herman*, 172 F.3d at 139, *quoting*, *Donovan v. Janitorial Servs, Inc.,* 672 F.2d 528, 531 (5th Cir. 1982).

Defendant Dawson purchased the corporate Defendant and the name was changed to TFC-RB LLC (the currently named LLC Defendant is referred to as the "corporate Defendant" herein). Dawson Deposition, P12-13. TFC-RB LLC was previously named TFC USA, but they conduct "basically the same" business (i.e. driving services for the Defendants' car rental clients such as Budget, Avis, Dollar and Thrifty at the airport). Dawson Deposition, P14, L1-18. Defendant Dawson is 100% owner of the Defendant TFC-RB, LLC. Dawson Deposition, P32, L20-25. Defendant Dawson is the President of the Defendant TFC-RB, LLC. Dawson Deposition, P35, L1-5. Nobody has more financial control over the LLC Defendant (herein "corporate Defendant") than Defendant Dawson. Dawson Deposition, P35, L13-15.

In hiring drivers such as Plaintiffs, Defendant Dawson would discuss the screening process with his assistant Adriana, and would also consult with the Defendants' clients (i.e. the car rental companies at the airport). Dawson would also "sometimes

11

make the decision" to not allow drivers to do work for the corporate Defendant.  Dawson had authority to "terminate" the drivers Dawson Deposition, P36, L20-25; P37, L1-25.  Dawson delegated come decision-making regarding hiring.  Castillo Deposition, P25, L9-11.

      Although Adriana Castillo was allegedly an independent contractor, she worked as "administration supervisor" for Defendants; and the "managers" were "under" Defendant Dawson and Castillo (Dawson answered "myself and Adriana....").  Each location had a supervisor.  Dawson Deposition P38-39.  Adriana had a cubicle in Defendants' office, and drivers would go to that office if there was a problem with their checks.  Dawson Deposition P43, L9-21.  Defendant Dawson would communicate with the Plaintiffs at the office, and would resolve issues involving Plaintiffs if a client complained drivers were leaving early, or if there were problems with the hours, changes in shifts etc.  Dawson Deposition P43, L9-25.  Castillo claims she worked FOR Defendants as a "secretary" and in no other position.  Castillo Deposition P3, L20-25; P4, L1-10.   Defendant Dawson made the "ultimate decisions" regarding Plaintiffs' pay rate, and he signed the checks.  Nobody had more authority than Defendant Dawson over the finances and budget, and he handled the "day to day" operations.  Dawson was at the office "daily".  Castillo Deposition P21, L1-25; P22.  Defendant Dawson would resolve the "day-to-day problems [that] arose" regarding Plaintiffs' jobs.  Dawson Deposition P44, L1-9.

      Defendant Dawson allegedly made the decision to limit hours to "forty" per week regarding Plaintiffs' schedules.  Dawson Deposition P46, L15-25. Defendant Dawson decided Plaintiffs' "rate of pay" and maintained records regarding Plaintiffs' employment

including "time sheets". Defendants used a punch card machine and written records to keep track of Plaintiffs' time. Dawson paid the Plaintiffs by check issued by the corporate Defendant. Sometimes Dawson would pay the Plaintiffs with his "own personal check". Dawson Deposition P47, L12-25; P48, L1-25; P49, L20-25; P51, L1-25. Defendant Dawson "personally" took charge of Plaintiffs' records. Castillo Deposition P36, L16-25.

Based on the stated facts and law, Dawson was Plaintiffs' FLSA employer, and it is also clear in this case that the Plaintiffs were not independent contractors. Plaintiffs were employees of Defendants' as defined by 29 U.S.C. § 203(e)(1). An employee, as defined by 29 U.S.C. § 203(e)(1), is any individual employed by an employer. An employer includes any person acting directly or indirectly in the interest of an employer in relation to the employee. 29 U.S.C. § 203(d). An employment relationship is decided by applying the "economic realties test." *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1319 (D. Fla 2001).

In applying the "economic realities test," the Court should consider the following factors: (1) the nature and degree of control of the workers by the alleged employer; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skills; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered required a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business.

Defendant Dawson would "communicate orders" to the drivers (i.e. the Plaintiffs) through the supervisors. Castillo Deposition P26, L14-17. Those "marching orders"

13

were given by Defendant Dawson so that the "drivers were instructed correctly concerning their jobs". Castillo Deposition P27, L1-10.   Thus Dawson controlled the Plaintiffs.

The said facts show Defendants controlled Plaintiffs, and Defendants cannot argue Plaintiffs risked loss or profit due to managerial skills—Plaintiffs were paid a fixed hourly rate (as set forth below the facts show overtime was never paid regarding those hours).  Defendants also cannot argue Plaintiffs profited by any type of bidding process whereby their profit would need to exceed costs.  Plaintiffs never did any bidding regarding the Defendants' clients.  Deposition of Castillo P29, L11-18.   Also, Defendants were required to have workers compensation and liability insurance.  Dawson Deposition, P16, L11-25.  However, Defendants allegedly deducted money from Plaintiffs' checks to pay for insurance.  Dawson Deposition, P35, L1-14.

Defendants will not be able to argue Plaintiffs needed to invest any money for the job[6] or that Plaintiffs were expected to hire any assistants to assist them.  Defendants purchased the vans used for the Defendants' business.  Dawson Deposition, P26, L21-25; P27, L1-10.   Plaintiffs never had to provide their own vehicles or any equipment. Dawson Deposition P44, L20-25.  As drivers, the Plaintiffs were not required to fulfill any "special requirements for education or certification" to do their jobs and driving was an "integral part" of the job.  Dawson Deposition P45, L4-17.  See also Deposition of Castillo, P28, L1-25.

---

[6] At most Defendants argue Defendant deducted funds from the Plaintiffs' checks for insurance.  However, such is simply another example of Defendant attempting to deny Plaintiffs their appropriate hourly wage along with the lack of overtime pay.

14

In *Jeanneret v. Aron's East Coast Towing*, 2002 U.S. App. Lexis 27699 (11th Cir. 2002), the Appellate Court affirmed the District Court's definition of an employer and employee under the FLSA.  "Section 203(d) of the FLSA defines an "employer" as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'  It further defines 'employee' as 'any individual employed by and employer.'" *Id.* at 6.  "To 'employ' means 'to suffer or permit to work." *Id.*  The court states that a determination of employment status under the FLSA is a question of federal law. *Id*.  Whether an employment relationship exits under the FLSA must be judged by the 'economic realities' of the individual case and not by traditional common-law principles. Id.

Furthermore, economic dependence determines the employer/employee relationship under the Act.  See, *Apolinar Martinez-Mendoza et.al. v. Champion International Corporation*, 16 Fla. L. Weekly Fed. C945, (11th Cir. 2003).  The Eleventh Circuit stated at HN13 that "in entertaining and assessing the evidence relevant to the inquiry called for by a given factor, the question the district court must ask itself is whether such evidence, considered as a whole, supports (or fails to support) the laborer's claim that he is economically dependent on the putative employer." [emphasis added]. In this case, Defendants will not be able to argue Plaintiffs were not economically dependant on Defendants during the relevant employment period.

The lack of an independent contractor relationship in this case further goes to show the employment relationship that exists between the Plaintiff and the individual Defendant Dawson and the corporate Defendant.  The individual Defendant Dawson controlled the day to day operations and dominated the corporate Defendant's budgetary

and financial operation.

**D.    DEFENDANTS' ARE LIABLE FOR UNPAID WAGES AND LIQUIDATED DAMAGES AS TO PLAINTIFF AS A MATTER OF LAW.**

See, Joiner v. Macon, 814 F.2d 1537, 1539 (11th Cir. 1987) (employer who knew or who had reason to know that the FLSA applied cannot establish good faith as a defense); Reeves v. International Tel. & Tel. Corp., 616 F.2d 1342 (5th Cir. 1980) (Absent affirmative showing on Employer's part to verify compliance with the F.L.S.A., double damages are mandatory under the F.L.S.A.). Also see James Leach Jr. v. Johnston et.al., 812 F.Supp 1198 ( M.D. Fla. 1992) (good faith entails a duty to affirmatively investigate.)  See also, Barcellona et.al. v. Tiffany English Pub, Inc., 597 F.2d 464 (5th Circuit 1979); Lynn Martin v. Selker Brothers, Inc. et. al. , 949 F.2d 1286 (3rd Cir. 1991). Double damages are the "norm" and the Defendant's burden to escape the imposition of "double damages" is a heavy one.  See Martin v. Cooper Electric Supply Co., 940 F.2d 896 (3rd Cir. 1991). The employer's burden of proof is a difficult one to meet to avoid the imposition of double damages. Brock v. Wilamowsky (2nd Cir., 1987) *See also*, Walton v. United Consumers Club, Inc., 786 F.2d 303 (7th Cir. 1986); Shea v. Galaxie Lumber & Construction Company, Ltd., 152 F.3d 729 (7th Cir. 1998).  *See*, *Silas v. Hillsborough County*, 2006 U.S. Dist. LEXIS 79503, *18 (M.D. Fla. 2006)(liability for liquidated damages is properly determined at the summary judgment stage).

Defendant Dawson allegedly made the decision to limit hours to "forty" per week regarding Plaintiffs' schedules because Defendants were investigated by the Department of Labor ("DOL").   Dawson Deposition P46, L15-25.  Pursuant to the investigation by the DOL, the DOL gave Defendants tasks to implement.   Dawson Deposition P76, L21-25; P77, L1-25.  Defendant admits that prior to being investigated by the DOL, "the

workers were working over 40 hours." Prior to being sued, Defendant never consulted with any party to affirmatively determine if Defendants were complying with the wage and hour laws.   Dawson Deposition P78, L8-19; P81, 1-14.

It is thus beyond dispute that Defendants failed to pay the overtime, were investigated by the DOL and never took any affirmative measures to even see if Defendants' wage policies were legally tenable in any way prior to being investigated and instructed by the DOL to implement changes.

Defendant Dawson limited the hours to (40) hours because "he was sued for not paying overtime."  Castillo said "No" when asked specifically if Defendants paid overtime wages.  Castillo Deposition P23, L1-25.   Plaintiffs were never paid time and a half.  Even after Defendant Dawson allegedly prohibited further overtime hours, at least a "few" drivers still worked overtime hours because "the company needed somebody to work the hours."  Deposition of Castillo, P30, L1-25; P31, L1-3.  The element of good faith is lacking to permit Defendants to avoid liquidated doubling.

E.      **RETALIATORY DISCHARGE AS TO MANUEL PEREIRA.**

Defendants were prohibited from retaliating against Plaintiff Pereira in violation of 29 U.S.C. 215(A)(3): the assertion of rights and not the fact of a violation gives rise to the protection against retaliation. Thus, an employee who asserts rights under the Act need not prove a statutory violation of the Act to prevail under Section 215(a)(3). An employee who acts on a good faith but mistaken belief that the employer's conduct is illegal may not be subjected to discharge or other retaliation.

With respect to the governing law in the 11th Circuit, as the Southern District of Florida noted in *Motte v. Worldwide Flight Services, Inc.*, 02-20217-CIV-MARRA

17

(DE# 86), "[t]o recover for retaliation, the plaintiff 'need not prove the underlying claim of discrimination which led to [her] protest;' however, the plaintiff must have a good faith belief that the discrimination existed." *Holifield v. Reno*, 115 F.3d 115 F.3d 1555, 1566 (11th Cir. 1997), *quoting Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989). *See, Wirtz v. Ross Packaging Company*, 367 F.2d 549, 550-51 (5th Cir. 1966)(Old Fifth Circuit pointed out that it is not necessary that the employee "be engaged in activities covered by the Act's wage and hour provisions in order for the strictures against discriminatory discharge to be invoked."). *See also, Sapperstein v. Hager*, 188 F.3d 852 (7th Cir. 1999)(Section 215(a)(3) discharge action can still be maintained by an employee notwithstanding that the employer is not covered by the FLSA wage and hour provisions).

As set forth hereinabove, Plaintiffs state that FLSA coverage exists. However, even if there was not FLSA coverage regarding the wage claims in the instant case, there is no justification to allege that Plaintiff filed his action in bad faith doubting the validity of his claim. Therefore, regardless of whether the Court ultimately finds FLSA coverage concerning the wage claims, the Court must still permit the retaliation action to proceed to trial. See attached Amended Final Judgment in Southern District matter of *Velasquez v. All Florida Security Corp. et al.*, 07-23159-CIV-KING, where this Court re-opened the FLSA retaliation claim notwithstanding that the wage claims were disposed of via summary judgment and are the subject of a pending appeal before the Eleventh Circuit.

WHEREFORE, THE PLAINTIFFS REQUEST A RULING THAT: (1) COVERAGE (I.E. SUBJECT MATTER JURISDICTION) UNDER THE FAIR LABOR STANDARDS ACT (THE "ACT") EXISTS; (2) PLAINTIFFS WERE DEFENDANTS' EMPLOYEES UNDER THE ACT AND WERE NOT INDEPENDENT CONTRACTORS; (3) DEFENDANT MICHAEL DAWSON WAS PLAINTIFFS' EMPLOYER UNDER THE ACT AND SHALL BE INDIVIDUALLY LIABLE JOINTLY AND SEVERALLY WITH THE CORPORATE DEFENDANT; (4) LIABILITY EXISTS AS TO THE WAGE CLAIMS AND LIQUIDATED DAMAGES SHALL BE APPLIED UPON DETERMINATION OF THE AMOUNT OF DAMAGES BY THE JURY; (5) PLAINTIFF MANUEL PEREIRA'S RETALIATION CLAIM SHALL PROCEED TO TRIAL.

Respectfully submitted,

K. DAVID KELLY, ESQ.
J.H. ZIDELL, P.A.
ATTORNEY FOR PLAINTIFF
300 71ST STREET, #605
MIAMI BEACH, FLA. 33141
PH: 305-865-6766
FAX: 305-865-7167
EMAIL: KRL_KELLY@YAHOO.COM
F.B.N. 0123870
BY:____/s/ K. David Kelly_____
K. DAVID KELLY, ESQ.

**CERTIFICATE OF SERVICE**:

I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING WAS PROVIDED SUBSEQUENT TO E-FILING TO:

ALL COUNSEL LISTED IN THE COURT'S E-FILING SYSTEM

STUART M. SILVERMAN, P.A.
STUART M. SILVERMAN, ESQ.
2500 N. MILITARY TRAIL, STE. 283
BOCA RATON, FL 33481
FAX: 561.999-9958/561.367.7384

BY:____/s/ K. David Kelly_____
K. DAVID KELLY, ESQ.