UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-21352-CIV-UNGARO/SIMONTON
<u>CONSENT CASE</u>

ANDRES VARGAS RODILLA; ROBERTO )
CHAMORRO; RICARDO LOZO; )
GUILLERMO SALA; JULIO ABREU, )
MANUEL PEREIRA, MARIA E. GIRALDO, )
JOSE JIMENEZ, OMAR CANO, JOEL )
RODRIGUEZ, WILLIAM EDGARDO )
LANDIETA, MARIA CAROLINA MARTIN )
and all others similarly situated under 29 USC )
216(B) )

   Plaintiffs,

  vs.

TFC-RB, LLC
MICHAEL DAWSON
   Defendants
_____

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

COME NOW the Plaintiff(s), pursuant to Fed.R.Civ.P. Rule 56 and SDLR 7.5 and file(s) their Statement of Material Facts in support as follows:

**FLSA COVERAGE (I.E. SUBJECT MATTER JURISDICTION)**

1. During the time the corporate Defendant was in existence according to the Defendants, the $500,000 prong of FLSA coverage has been met. See attached deposition of Defendant Dawson, P5, L6-25. Such is confirmed for both 2007 and 2008. Castillo Deposition, P10-11. It is alleged that the named Defendant TFC-RB, LLC was a vehicle used to "pay the people" although another entity may have been used for "invoicing". Castillo Deposition, P10, L18-25. Defendant Dawson controlled that company as well that had a

1

       "common business" purpose.   Castillo Deposition, P19, L18-25.

2.     Plaintiffs' jobs consisted of driving rental cars (the cars belonged to Defendants' clients such as Budget, Avis, Dollar and Thrifty at the airport) around the airport to be serviced.  Dawson Deposition, P14, L1-18; P15.

3.     The cars driven by Plaintiffs were "driven around Fort Lauderdale Airport" and sometimes to "Orlando".  Castillo Deposition, P14, L17-25, P15, L1.

4.     It is "common" regarding Defendants' client Budget that customers would rent the vehicles outside the state of Florida, ex. "North Carolina", given the deponent's knowledge of related "tax".  "Budget [was] an important client" of Defendants.  Ms. Castillo responded "[y]eah" that it was "common that these vehicles had out of state plates on them".  Plaintiffs would drive those cars that commonly traversed state lines.  Castillo Deposition, P15, L1-25; P16, L1-25.   In addition to Defendants' important client Budget, Castillo believes she also saw out of state plates on Defendants other "important" client "Dollar".  Sometimes the customers would "rent the cars here and then drive them to another state."  Sometimes they would be rented out of state and be driven here [i.e. into Florida].  The Plaintiffs would then drive them around the airport [to have serviced].  Castillo Deposition, P17, L21-25; P18, L1-25.

**INDIVIDUAL LIABILITY AND INDEPENDENT CONTRACTOR ISSUES**

5.     Defendant Dawson purchased the corporate Defendant and the name was changed to TFC-RB LLC (the currently named LLC Defendant is referred to as the "corporate Defendant" herein).  Dawson Deposition, P12-13.  TFC-RB LLC was previously named TFC USA, but they conduct "basically the same"

business (i.e. driving services for the Defendants' car rental clients such as Budget, Avis, Dollar and Thrifty at the airport).  Dawson Deposition, P14, L1-18.

6. Defendants were required to have workers compensation and liability insurance.  Dawson Deposition, P16, L11-25.  Defendants allegedly deducted money from Plaintiffs' checks to pay for insurance.  Dawson Deposition, P35, L1-14.

7. Defendant Dawson is 100% owner of the Defendant TFC-RB, LLC.  Dawson Deposition, P32, L20-25.  Defendant Dawson is the President of the Defendant TFC-RB, LLC.  Dawson Deposition, P35, L1-5.

8. Defendants purchased the vans used for the Defendants' business.  Dawson Deposition, P26, L21-25; P27, L1-10.

9. Nobody has more financial control over the LLC Defendant (herein "corporate Defendant") than Defendant Dawson.  Dawson Deposition, P35, L13-15.

10. In hiring drivers such as Plaintiffs, Defendant Dawson would discuss the screening process with his assistant Adriana, and would also consult with the Defendants' clients (i.e. the car rental companies at the airport).  Dawson would also "sometimes make the decision" to not allow drivers to do work for the corporate Defendant.   Dawson had authority to "terminate" the drivers Dawson Deposition, P36, L20-25; P37, L1-25.   Dawson delegated come decision-making regarding hiring.  Castillo Deposition, P25, L9-11.

11. Although Adriana Castillo was allegedly an independent contractor, she

worked as "administration supervisor" for Defendants; and the "managers" were "under" Defendant Dawson and Castillo (Dawson answered "myself and Adriana...."). Each location had a supervisor. Dawson Deposition P38-39. Adriana had a cubicle in Defendants' office, and drivers would go to that office if there was a problem with their checks. Dawson Deposition P43, L9-21. Defendant Dawson would communicate with the Plaintiffs at the office, and would resolve issues involving Plaintiffs if a clients complained drivers were leaving early, or if there were problems with the hours, changes in shifts etc. Dawson Deposition P43, L9-25.

12. Defendant Dawson would "communicate orders" to the drivers (i.e. the Plaintiffs) through the supervisors. Castillo Deposition P26, L14-17. Those "marching orders" were given by Defendant Dawson so that the "drivers were instructed correctly concerning their jobs". Castillo Deposition P27, L1-10.

13. Castillo claims she worked FOR Defendants as a "secretary" and in no other position. Castillo Deposition P3, L20-25; P4, L1-10. Defendant Dawson made the "ultimate decisions" regarding Plaintiffs' pay rate, and he signed the checks. Nobody had more authority than Defendant Dawson over the finances and budget, and he handled the "day to day" operations. Dawson was at the office "daily". Castillo Deposition P21, L1-25; P22.

14. Defendant Dawson would resolve the "day-to-day problems [that] arose" regarding Plaintiffs' jobs. Dawson Deposition P44, L1-9.

15. Plaintiffs never had to provide their own vehicles or any equipment. Dawson Deposition P44, L20-25. As drivers, the Plaintiffs were not required to fulfill

4

any "special requirements for education or certification" to do their jobs and driving was an "integral part" of the job. Dawson Deposition P45, L4-17. See also Deposition of Castillo, P28, L1-25. Plaintiffs never did any bidding regarding the Defendants' clients. Deposition of Castillo P29, L11-18.

16. Defendant Dawson allegedly made the decision to limit hours to "forty" per week regarding Plaintiffs' schedules. Dawson Deposition P46, L15-25.

17. Defendant Dawson decided Plaintiffs' "rate of pay" and maintained records regarding Plaintiffs' employment including "time sheets". Defendants used a punch card machine and written records to keep track of Plaintiffs' time. Dawson paid the Plaintiffs by check issued by the corporate Defendant. Sometimes Dawson would pay the Plaintiffs with his "own personal check". Dawson Deposition P47, L12-25; P48, L1-25; P49, L20-25; P51, L1-25. Defendant Dawson "personally" took charge of Plaintiffs' records. Castillo Deposition P36, L16-25.

**LIABILITY AND LIQUIDATED DAMAGES**

18. Defendant Dawson allegedly made the decision to limit hours to "forty" per week regarding Plaintiffs' schedules because Defendants were investigated by the Department of Labor ("DOL"). Dawson Deposition P46, L15-25.

19. Pursuant to the investigation by the DOL, the DOL gave Defendants tasks to implement. Dawson Deposition P76, L21-25; P77, L1-25.

20. Defendant admits that prior to being investigated by the DOL, "the workers were working over 40 hours." Prior to being sued, Defendant never consulted with any party to affirmatively determine if Defendants were complying with

      the wage and hour laws.   Dawson Deposition P78, L8-19; P81, 1-14.

21.    Defendant Dawson limited the hours to (40) hours because "he was sued for not paying overtime."  Castillo said "No" when asked specifically if Defendants paid overtime wages.  Castillo Deposition P23, L1-25.  Plaintiffs were never paid time and a half.  Even after Defendant Dawson allegedly prohibited further overtime hours, at least a "few" drivers still worked overtime hours because "the company needed somebody to work the hours."  Deposition of Castillo, P30, L1-25; P31, L1-3.

**Respectfully submitted,**

**K. DAVID KELLY, ESQ.**
**J.H. ZIDELL, P.A.**
**ATTORNEY FOR PLAINTIFF**
**300 71ST STREET, #605**
**MIAMI BEACH, FLA. 33141**
**PH: 305-865-6766**
**FAX: 305-865-7167**
**EMAIL: KRL_KELLY@YAHOO.COM**
**F.B.N. 0123870**
**BY:____/s/ K. David Kelly_____**
**K. DAVID KELLY, ESQ.**

**CERTIFICATE OF SERVICE**:

**I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING WAS PROVIDED SUBSEQUENT TO E-FILING TO:**

**ALL COUNSEL LISTED IN THE COURT'S E-FILING SYSTEM**

**STUART M. SILVERMAN, P.A.**
**STUART M. SILVERMAN, ESQ.**
**2500 N. MILITARY TRAIL, STE. 283**
**BOCA RATON, FL 33481**
**FAX: 561.999-9958/561.367.7384**

    **BY:____/s/ K. David Kelly_____**
    **K. DAVID KELLY, ESQ.**

6