**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  08-21352-CIV-AMS**
<u>**CONSENT CASE**</u>

**ANDRES VARGAS RODILLA, et al.,**

      **Plaintiffs,**

**v.**

**TFC-RB, LLC, FLORIDA**
**JET AVIATION CLEANING SERVICES**
**INC., D/B/A TFC-RB and**
**MICHAEL DAWSON,**

      **Defendants.**

_____/

<u>**ORDER GRANTING PLAINTIFFS'**</u>
<u>**MOTION FOR PARTIAL SUMMARY JUDGMENT, IN PART, AND**</u>
<u>**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

      This cause is before the Court upon Plaintiffs' Motion for Partial Summary Judgment (DE # 64) and Defendants' Motion for Summary Judgment (DE #74).  Both Parties have filed Responses to the Opposing Parties' Motion (DE ## 71, 77) and each Party has filed a Reply in support of their own Motion (DE ## 80, 85).  The Parties have consented to full disposition by the undersigned Magistrate Judge (DE # 36). The District Judge has entered an order referring this matter to the undersigned in accordance with the Parties' consent (DE # 39).  On October 20, 2009, the undersigned held an oral argument on the Motions, wherein the Parties presented their respective positions.

      After careful consideration of the Parties' memoranda, the relevant case law, the record as a whole, and after hearing oral argument from the Parties on the Motions, for the following reasons, the Court hereby GRANTS Plaintiffs' Motion for Partial Summary Judgment, in part, against Defendants and DENIES the Defendants' Motion for Summary Judgment in this matter.

## I. <u>BACKGROUND</u>

This matter involves claims by thirteen Plaintiffs against Defendants Michael Dawson, TFC-RB, LLC, and Florida Jet Aviation Cleaning Services, Inc., alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-216, for failing to pay Plaintiffs overtime wages as required by that statute (DE # 70). In addition, the operative Complaint includes a second Count alleging that the Defendants retaliatorily discharged Plaintiff Manuel Pereira for joining this FLSA action, in violation of 29 U.S.C. § 215(a)(3). According to the Complaint, the Plaintiffs worked as car porters for the Defendants for varying lengths of time between the years of 2005 and 2008 (DE # 70).

Plaintiffs assert that the Defendants' business is subject to the requirements of the FLSA because the business affected interstate commerce and the materials that were used by the Plaintiffs on the job that were supplied by the Defendants moved through interstate commerce prior to and subsequent to the Plaintiffs' use of those materials (DE # 70 at 3-4). Plaintiffs also allege that their "work for the Defendants were [sic] actually in and/or so closely related to the movement of commerce while they worked for the Defendants that the Fair Labor Standards Act applies to Plaintiffs' work for the Defendants." (DE # 70 at ¶ 9). In addition, Plaintiffs allege that the Defendants' Companies ("TFC-RB") grossed over $500,000 annually for the relevant time period. Plaintiffs also allege that all of the Defendants were joint employers of the Plaintiffs as that term is defined under the FLSA, and that the individual Defendant, Michael Dawson, is a corporate officer, owner or manager of the Corporate Defendants who runs the day to day operations of those companies.[1]

---

[1] **Defendants have stipulated that the corporate Defendants constitute a joint enterprise for purposes of the FLSA, and therefore they are referred to as "TFC-RB" in**

In the Plaintiffs' Motion for Partial Summary Judgment, Plaintiffs seek to have the Court rule that: 1) FLSA coverage exists in this action; 2) Defendant Michael Dawson is individually liable under the FLSA; 3) Plaintiffs were employees of the Defendants and not independent contractors; 4) Defendants are liable as a matter of law for some of the overtime violations and liquidated damages and thus the jury only need decide the amount of damages (DE #64).[2]

In the Defendants' Motion for Summary Judgment, Defendants seek to have the Court enter judgment in their favor by finding that: 1) Plaintiffs have failed to state a claim under the FLSA because Plaintiffs were independent contractors who only moved vehicles within the state: and 2) Plaintiff Manuel Pereira has failed to rebut the Defendants' legitimate, nondiscriminatory reasons for terminating Mr. Pereira, and thus has failed to meet his burden for establishing a claim for retaliatory discharge (DE # 74).

**II.     UNDISPUTED FACTS**

The following relevant facts are undisputed in this matter and were obtained from the depositions of Defendant Michael Dawson (DE # 65-4) and the former secretary of the Defendants' Companies, Adrianna Castillo (DE # 65-3), as well as the Affidavit of Plaintiff Manuel Pereira (DE # 78-1), all of which were submitted by the Plaintiffs in support of their Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment.

---

this Order.  In addition, Defendant Dawson has stipulated that if the companies are liable under the FLSA, he is individually liable.

[2] The undersigned notes that Plaintiffs have also requested in their Motion for Summary Judgment that Plaintiff Manuel Pereira's claim for retaliatory discharge be allowed to proceed to trial, which is the antithesis of a request for summary judgment. Thus, the undersigned addresses this issue by way of resolving the Defendants' Motion for Summary Judgment.

Michael Dawson and his wife bought the TFC USA Corporation in early 2007. Later that year, Mr. Dawson changed the name of the corporation to TFC-RB, LLC, of which he is the sole owner ("TFC-RB" or "Defendant Companies"). (Dawson Dep. DE # 65-4 at 4-5, 11-14, 26, 32, 34-35).[3]  In the years 2007 and 2008, TFC-RB grossed more than $500,000. (Dawson Dep. DE # 65-4 at 5, 12-14;  Castillo Dep. DE # 65-3 at 11).  The core business of TFC-RB was to transport rental cars for rental car agencies from one point to another at the Fort Lauderdale Airport so that the cars could be serviced and/or cleaned, and then returned to the rental car agencies. (Dawson Dep. DE # 65-4, 14-15;  Castillo Dep. DE # 65-3 at 11).  TFC-RB's rental car agency clients included Thrifty, Budget, Dollar, Enterprise, Avis and Payless Rent-A-Car, and TFC-RB held contracts with all of those rental car agencies at the airport.  (Dawson Dep. DE # 65-4 at 14, 21-22, 25, 30, 32; Castillo Dep, DE # 65-3 at 11).  The Plaintiffs in this action worked as drivers for TFC-RB. (Dawson Dep. DE # 65-4 at 14-15;  Castillo Dep, DE # 65-3 at 12).  Adriana Castillo worked as secretary for TFC-RB under both Michael Dawson and the previous owner; and, all of the Plaintiffs were already working for TFC-USA Corporation when Mr. Dawson purchased the company. (Dawson Dep. DE # 65-4 at 7, 8, 10; Castillo Dep. DE # 65-3 at 3-4).  At the time of the purchase, all of the Plaintiffs had previously signed "Independent Contractor Agreements" with the corporation.  (Dawson Dep. DE # 65-4 at 8, 10; Castillo Dep. DE # 65-3 at 11).

Mr. Dawson was the President of TFC-RB and handled the day to day operations

---

[3]  Although in Mr. Dawson's deposition testimony he indicated that there was a distinction between TFC-RB, LLC and TFC-RB, as well as several predecessor companies, those distinctions do not alter the instant analysis and for purposes of the instant Motions the undersigned refers to all of the entities as "TFC-RB".

of that corporation.[4] (Dawson Dep. DE # 65-4 at 35; Castillo Dep. DE # 65-3 at 22). He made the important corporate decisions and no one in the company had higher authority than he. (Dawson Dep. DE # 65-4 at 35; Castillo Dep. DE # 65-3 at 22). During the relevant time period, TFC-RB maintained two offices, one of which was at the Fort Lauderdale Airport. (Dawson Dep. DE # 65-4 at 41; Castillo Dep. DE # 65-3 at 20). The Plaintiffs' work schedules were made by TFC workers other than Mr. Dawson, although Mr. Dawson directed that the Plaintiffs would work no more than forty hours in a given week; and, Mr. Dawson determined how much the Plaintiffs were paid. (Dawson Dep. DE # 65-4 at 45-46, 47; Castillo Dep, DE # 65-3 at 23, 24, 26). The Plaintiff drivers all had supervisors who worked for the Defendant Companies but who were located at individual car rental agencies. (Dawson Dep. DE # 65-4 at 4, 12-14; Castillo Dep. DE # 65-3 at 11). TFC-RB kept track of the Plaintiffs' work hours through both sign-in sheets and punch cards. (Dawson Dep. DE # 65-4 at 48, 51-52, 54; Castillo Dep. DE # 65-3 at 31-32).  The supervisors would sign the time sheets when the Plaintiffs reported for and left work, and there were time cards and machines at every rental agency location at the airport. (Dawson Dep. DE # 65-4 at  52; Castillo Dep. DE # 65-3 at 31-32, 33).

The Plaintiff drivers were transported to and from the pickup and drop off spots for the rented vehicles by one of the two vans driven by the TFC employees. (Castillo Dep. DE # 65-3 at 47).  According to Adrianna Castillo, sometimes the Plaintiff drivers would vacuum and clean the Dollar rental cars. (Castillo Dep. DE # 65-3 at 12).  In

---

[4]  Mr. Dawson testified that as of January 2009, TFC-RB ceased doing business and is dormant. (DE # 65-4 at 19, 23, 34).

addition, sometimes the TFC workers would take the rental cars to Orlando.[5] (Castillo Dep. DE # 65-3 at 15).  Ms. Castillo further testified that it was common for cars that Plaintiffs drove for the Budget Rental Agency, which was an "important" client of TFC-RB, to come in from other states, like North Carolina, and to have out of state plates. (Castillo Dep. DE # 65-3 at 16, 17).  In addition, some of the cars from Dollar Rental Agency, which was also a very important client of TFC-RB, would have out of state plates on them. (Castillo Dep. DE #65-3 at 17-18).  Also, the customers of the rental companies would sometimes rent cars at the Ft. Lauderdale Airport and then drive them to other states. (Castillo Dep. DE # 65-3 at 18).  It is undisputed that the rental car agencies regularly rented cars to persons who arrived at the Ft. Lauderdale Airport from out of state; and cars were regularly returned to the rental car agencies by persons who were boarding airplanes to travel out-of-state.[6]  In addition, sometimes the Plaintiff drivers would move the cars to a parking spot where they would remain until the rental car companies had their tractor trailers come and move the car back to the "auctions." (Dawson Dep. DE # 65-4 at 15).  At some point during the relevant time period, at least one individual who worked for TFC-RB performed oil changes for Dollar/Thrifty on the rental vehicles. (Dawson Dep. DE  # 65-4 at 28).

The Plaintiff drivers were paid by checks signed by Mr. Dawson and would go to Mr. Dawson's office if they had a problem with their check or to discuss their hours with

_____

[5] Mr. Dawson did not deny that this occurred but indicated in his deposition that as far as he knew, all of the vehicles were only driven by the Plaintiffs in Broward County.

[6] The issue of whether this was disputed was addressed at the oral argument on the summary judgment motions, at which time defense counsel sought additional time to consider whether this fact was challenged.  At the pretrial conference, defense counsel agreed that this fact was undisputed.

Ms. Castillo.  (Castillo Dep. DE # 65-3 at 20). TFC-RB deducted two dollars from the

Plaintiffs' pay checks for insurance that covered worker's compensation. (Castillo Dep.

DE # 65-3 at 34-35).  In addition, if cars were damaged by the Plaintiff drivers in an

amount less than $2000.00, half of the damages were paid for by the Plaintiffs. (Castillo

Dep. DE # 65-3 at 34-35). If the damages totaled more than $2000.00, TFC-RB's insurance

would cover it.  (Castillo Dep. DE # 65-3 at 34-35).  The Plaintiffs did not invest money

into TFC-RB and did not provide any of their own equipment or supplies for the

performance of their jobs. (Dawson Dep. DE # 65-4 at 28).  The Plaintiffs needed no

special training or skill set other than the ability to drive in order to perform their job.

(Dawson Dep. DE # 65-4 at 45).

###### III.    FRAMEWORK FOR ANALYSIS

###### A.    Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of summary

judgment where the pleadings and supporting materials show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter

of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is

properly regarded not as a disfavored procedural shortcut but, rather, as an integral part

of the federal rules as a whole, which are designed to secure a just, speedy, and

inexpensive determination of every action.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

However, all reasonable doubts about the facts should be resolved in favor of the

non-movant.  *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 (11th Cir. 1982)

(citations omitted).  If the record presents factual issues, the court must not decide

them; it must deny the motion and proceed to trial. *Id.*  Thus, summary judgment may be

inappropriate even where the parties agree on the basic facts, but disagree about the

7

inferences that should be drawn from these facts.  *Profitel Group, LLC. v. Polyone Corp.*, 238 Fed. Appx. 444 (11th Cir. 2007) *citing Clemons*, 684 F.2d at 1368.  If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.  *Id.*  However, the mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Id. citing Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999) (quotation omitted).

Where the moving party bears the burden of proof, it is incumbent upon the moving party to produce evidence to establish its claim.  However, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, ... Rule 56(e) requires the nonmoving party to go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp., supra.*, 477 U.S. at 324. The moving party is required only to point to the absence of evidence in the record as to that issue.

**B.     FLSA Jurisdiction-Enterprise Coverage**

Under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., an employee "engaged in commerce or in the production of goods for commerce," or "employed in an enterprise engaged in commerce or in the production of goods for commerce" must be paid for hours worked over forty hours per week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  Thus, the FLSA provides coverage in two circumstances: (1) where an employee is engaged in commerce or the production of goods for commerce; or (2) where an employee works for an "enterprise" engaged in commerce or in the production of goods for commerce. *Ares v. Manuel Diaz Farms, Inc.*, 318 F.3d 1054, 1056 (11th Cir. 2003).

8

In this case, the Plaintiffs argue that Defendants are subject to the requirements of the FLSA as an "enterprise" pursuant to 29 U.S.C. § 203(s)(1), which provides in pertinent part:

> (s)(1) "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that--
>
> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1).  In addition,

> An enterprise . . . will be considered to have employees engaged in commerce or in the production of goods for commerce, including the handling, selling or otherwise working on goods that have been moved in or produced for commerce by any person, if . . . it regularly and recurrently has at least two or more employees engaged in such activities. On the other hand, it is plain that an enterprise that has employees engaged in such activities only in isolated or sporadic occasions, will not meet this condition.

29 C.F.R. § 779.238 (1970).  Thus, in order to prevail on their jurisdictional argument, the Plaintiffs must demonstrate that there remain no genuine issues of material fact as to whether: 1) the Defendants grossed more than $500,000 annually during the relevant time period; and 2) the Plaintiffs were employed by an enterprise that engaged in commerce or the production of goods for commerce as defined by the FLSA.  The undersigned thus will examine each prong, in turn.

### 1. Defendant Companies grossed $500,000 annually

In support of their Motion, the Plaintiffs have submitted a Statement of Material

Facts (DE # 65) wherein they assert that based upon the testimony given in the Depositions of Defendant Michael Dawson and a former secretary for TFC-RB Adrianna Castillo, that there is no dispute that the Defendants grossed $500,000 annually and therefore that prong of the FLSA enterprise coverage has been met.

In its Response, Defendants did not address this issue.  However, as stated above, Defendant Michael Dawson testified at his deposition that in the year 2007, TFC-RB, LLC grossed $500,000. (Dawson Dep. DE # 65-5, at 5).  Similarly, Adriana Castillo testified in her deposition Florida Jet Aviation, the company that invoiced and collected money for the services provided by the Defendants' Companies, grossed $500,000 in the years 2007 and 2008 (Castillo Dep. DE 65-4 at 10-11).  The Defendants do not dispute this testimony and conceded at the oral argument that this element was not contested. Therefore, the undersigned concludes that the Plaintiffs have demonstrated that the Defendant Companies grossed over $500,000 annually during the years of 2007 and 2008 and thus, this prong of the FLSA enterprise coverage determination is satisfied for those years.[7]

2.  <u>Enterprise employees engaged in commerce or in the production of goods for commerce</u>

In order to satisfy the second prong of enterprise coverage, the Plaintiffs must meet the definition of "enterprise" contained in § 203 (s)(1)(A)(i) by demonstrating that the enterprise at issue has employees regularly engaged in commerce or in the production of goods for commerce, or has employees handling, selling, or otherwise

---

[7] However, the undersigned noted at the hearing that there was no evidence in the record that the Defendant Companies, or their predecessors, grossed $500,000 for the years of 2005 and 2006.  In fact, there is no evidence at all in the record regarding income for 2005 and 2006, and thus summary judgment was not sought by either side with respect to those years.

working on goods or materials that have been moved in or produced for commerce by any person.[8]  In their papers, both Parties have focused on whether the Plaintiffs handled or otherwise worked on goods or materials that had been moved in or produced for commerce; and, specifically whether the cars driven by the Plaintiffs qualified as "goods" or "materials".  Thus, the Parties only briefly and implicitly addressed in their papers whether the employees, themselves, were engaged in commerce or in the production of goods for commerce as set forth in the first phrase of the (s)(1)(A)(i) definition.  However, at the oral argument on the instant Motions, Plaintiffs relied on both bases, and Defendants contended that neither aspect of enterprise coverage was satisfied.

                       3.  <u>Enterprise that has employees engaged in commerce</u>

      In determining whether an employee is engaged in interstate commerce within the meaning of the FLSA, the courts have been "guided by practical considerations." *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122, 1123 (5th Cir. 1979)[9] (quoting *Overstreet v. North Shore Corp.*, 318 U.S. 125 (1943) (quoting *Walling v. Jacksonville Paper Co.*, 317 U.S. 564 (1943)). In making this determination, the courts look to see if an employee's work "is actually in commerce or is so closely related to the movement of commerce that

---

     [8] Under 29 U.S.C.A. § 203 (r)(1), a somewhat general definition of "enterprise" is given related to the corporate structure of the business entity.  The Defendants have not challenged whether they qualify as an enterprise under this definition but rather have only asserted that they are not engaged in the activity defined in (s)(1).  Thus, the undersigned only addresses whether the Defendants' activities fall within the ambit of those activities set forth in that section.

     [9] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

it is for practical purposes a part of it rather than an isolated local activity." *Id*. (citing

*Mitchell v. C.W. Vollmer & Co.,* 349 U.S. 427 (1955)).

Coverage for "employees doing work related to instrumentalities of commerce" is

addressed 29 CFR § 776.11 which provides,

> (a) Another large category of employees covered as "engaged in commerce" is comprised of employees performing the work involved in the maintenance, repair, or improvement of existing instrumentalities of commerce. Typical illustrations of instrumentalities of commerce include...ships, vehicles, and aircraft regularly used in transportation of persons or goods in commerce; and similar fixed or movable facilities on which the flow of interstate and foreign commerce depends.

> b) It is well settled that the work of employees involved in the maintenance, repair, or improvement of such existing instrumentalities of commerce is so closely related to interstate or foreign commerce as to be in practice and in legal contemplation a part of it. Included among the employees who are thus "engaged in commerce" within the meaning of the Act are employees engaged in the maintenance or alteration and repair of ships or trucks used as instrumentalities of interstate or foreign commerce. Also, employees have been held covered as engaged in commerce where they perform such work as watching or guarding ships or vehicles which are regularly used in commerce or maintaining, watching, or guarding warehouses, railroad or equipment yards, etc., where goods moving in interstate commerce are temporarily held, or acting as porters, janitors, or in other maintenance capacities in bus stations, railroad stations, airports, or other transportation terminals.

Thus, for purposes of enterprise coverage, the court must determine whether any

of the Defendants' employees are engaged in commerce by performing work involved in

the maintenance, repair or improvement of existing instrumentalities of commerce.

Several courts have held that under facts similar to those herein, such coverage

applies.[10]

In *Hertz Drivurself Stations, Inc. v. United States,* 150 F.2d 923 (8th Cir. 1945), for example, the court examined, for FLSA coverage purposes, a corporation engaged in the business of leasing or renting trucks and cars on a "drive it yourself system" and maintaining those vehicles.  In determining that the corporation was engaged in commerce, the court stated, "We do not believe there can be any question that the owner of a fleet of automobile trucks who is engaged in the business of leasing them to others as instruments of interstate transportation and of maintaining them in condition for and during such use is engaged in interstate commerce." *Id.* at 926.  The court further stated, "any employee of the owner or operator of direct instrumentalities or necessary facilities of interstate transportation whose task is immediately connected with maintaining or keeping them in condition for and during such use must similarly be regarded as being engaged in commerce." *Id.*

Similarly, in *Brennan v. Ventimiglia*, 356 F. Supp. 281 (N.D. Ohio 1973), the court examined whether the employees of a gasoline service station were engaged in commerce for purposes of the FLSA.  The court held that the defendant's employees were engaged in commerce, in part, because they serviced cars which had been or would be used for interstate commerce.  *Id.* at 282.  The court compared the defendant's

---

[10]  For purposes of this analysis, the Court has cited to various regulations which were promulgated to clarify whether an employee is engaged in commerce or engaged in the production of goods for commerce for purposes of determining individual coverage under the FLSA.  However, CFR 776.22a, makes clear that once the "enterprise" definition under 3(r) of the FLSA is met, if an enterprise is engaged in commerce or in the production of goods for commerce, it is subject to the act to the same extent as an individual employee engaged in commerce or in the production of goods for commerce, unless specifically exempt.  Thus, the undersigned uses the same analysis that would apply to an assertion of individual coverage to determine whether an enterprise is engaged in commerce or in the production if goods for commerce.

service station business to the architecture firm in *Mitchell v. Lublin, McGaughy and Associates*, 358 U.S. 207 (1959), which was held to have produced services used for interstate commerce because it designed architectural fixtures for military bases through which there was interstate traffic.  Significantly, the court in *Brennan* also noted that the proportion of time spent in commercial-related activity was not relevant as long as the service or sales were regularly made.  *Id.* at 283.

In this case, the Plaintiffs' work consists of moving rental cars at the airport on behalf of car rental agencies so that the cars may be serviced, prior to the cars being returned to the rental car agencies.  The rental car agencies, which are located at the Ft. Lauderdale International Airport, regularly rent cars to passengers arriving from out-of-state, and at least Budget Rental Agency commonly received cars with out-of-state license tags.  Thus, the Plaintiffs' work is immediately connected with maintaining and keeping the vehicles in condition for future use, which regularly includes the transportation of persons traveling across state lines, as testified to by Adrianna Castillo.  In this regard, the rental cars may well be considered instrumentalities of commerce, because as noted above, 29 C.F.R. § 776.11 confirms that instrumentalities of commerce include vehicles regularly used in transportation of persons or goods in commerce.  Thus, the undersigned concludes that the Plaintiffs' work is so closely related to the movement of commerce that it is for practical purposes a part of it, rather than an isolated local activity.

This conclusion is bolstered by the fact that it is undisputed that Defendants' workers moved automobiles at the Fort Lauderdale Airport.  In *W.B. Jackson v. Airways Parking Company*, 297 F. Supp. 1366 (N.D. Ga. 1969), a district court concluded that an employee was engaged in interstate commerce for FLSA purposes, while working as a

14

parking lot attendant at parking lots adjacent to the Atlanta Municipal Airport.  In arriving

at its determination, the court acknowledged that although courts had reached varying

conclusions whether workers were engaged in commerce, the courts have applied

several factors in making that determination, including: the extent of the work claimed to

be part of interstate commerce, the structure and operations of the company, the

competitive status of the firm, the relationship with those clearly engaged in interstate

transportation and the geographical location of the local termini.  *Id*. at 1373.  In addition,

the court noted that other factors should be considered including:  the extent to which

admittedly interstate commerce would be impeded without the employee activity in

question; the contribution the activity makes toward consummation of the interstate

transaction or communication; the extent to which the employee activity enables

instrumentalities of interstate commerce to effectively move commerce; the degree to

which the activity is a part of a continuous stream of commerce; and the contractual and

practical relationship between the activity and interstate commerce.  *Id*.  The court then

specifically focused on the fact that the defendant's business was closely economically

related to and dependent on the presence of the airport, and the fact that the absence of

the plaintiff's employment activities would impede interstate commerce at that airport.

The court also noted that the geographic proximity of the parking lot to the airport led to

a common-sense understanding of the intimate relationship between interstate travel

and the work performed by the workers at the defendant's parking lots. *Id*. at 1374.

Akin to the worker in *W.B. Jackson*, in this case, the Plaintiffs' work is directly

related to interstate commerce, both through the assistance in servicing the rental cars

in order that the rental agencies may re-rent, lease or sell the cars for use in interstate

travel, and also through allowing those passengers who arrive at the airport through

**15**

interstate travel, to rent as part of their travel, vehicles whose maintenance has been facilitated by the Plaintiffs' work.  Indeed, as noted by the undersigned at the hearing, a common-sense understanding of how car rental agencies at the airport conduct their business, including placement of the rental agency counters inside of the airport terminals and providing transportation for customers from the airport to the rental agencies' car lots, strongly suggests that there is an intimate relationship between interstate travel and the services provided by the car rental agencies, namely renting operational, clean vehicles for travelers.  As acknowledged by the Defendants, the rental car agencies regularly rent cars to persons arriving at or departing from the airport on an interstate journey.  This is not to say that every person who rents an automobile at the airport does so as part of an interstate journey, but for purposes of the FLSA, it is sufficient that employer's business, and thus, the employee's activities are part of its regular activities and thus have more than a remote connection to the interstate function involved.  In addition, in this case, according to the testimony of Michael Dawson, TFC-RB held contracts with all of its rental car agency customers at the Airport, which evidences that the Plaintiffs' work was part of the regular course of business for the car rental agencies, rather than a sporadic occurrence.

Thus, this case is distinguishable for *McLeod v. Threlkeld*, 319 U.S. 491 (1943), where the Supreme Court held that FLSA coverage did not extend to an employee who argued that he was engaged in commerce when he worked as a cook hired to prepare and serve meals to maintenance-of-way employees of two railroad companies.  The Court made a distinction between those employees who actually are in the channels of interstate commerce from those who merely affect commerce, and characterized the case as one, where it is "urged that the conception of 'in commerce' be extended beyond

the employees engaged in actual work upon the transportation facilities." *Id.* at 494. In contrast, in the case at bar, the Plaintiffs are engaged in transporting and working on the actual cars used in transportation rather than providing a service that merely affects the vehicles, such as preparing meals for the maintenance workers of the vehicles.

In addition, although Defendants argue that because Plaintiffs were not employees of the rental car agencies but rather worked for a company whose business activities were purely local, for purposes of determining whether employees are engaged in commerce, the Supreme Court has stated that the focus is on "the nature of the employee's activities rather than the character of his employer's business. Therefore, if his employees are found to be engaged in commerce, the employer cannot avoid his obligations under the Act on the ground that he is not 'engaged in commerce'. To the extent that his employees are engaged in commerce, so too is the employer." *Id.* citing *Kirschbaum v. Walling*, 316 U.S. 517, 524 (1942); *Walling v. Jacksonville Papers Co.*, 317 U.S. 564 (1943).

Accordingly, the undersigned concludes that the Plaintiffs were engaged in commerce for purposes of enterprise coverage.

    4.  <u>Enterprise that has employees engaged in the production of goods for commerce</u>

The Court also concludes that the Plaintiffs worked for an enterprise that had employees engaged in the production of goods for commerce. According to the Code of Federal Regulations, for purposes of FLSA coverage, "Production of Goods for Commerce" is explained as follows:

> § 776.14 Elements of "production" coverage.
> Sections 6 and 7 of the Act, as has been noted, cover not
> only employees who are engaged "in commerce" as
> explained above, but also "each" and "any" employee who is

> engaged in the "production" of "goods" for "commerce".
> What employees are so engaged can be determined only by
> references to the very comprehensive definitions which
> Congress has supplied to make clear what is meant by
> "production," by "goods," and by "commerce" as those
> words are used in sections 6 and 7. In the light of these
> definitions, there are three interrelated elements of coverage
> to be considered in determining whether an employee is
> engaged in the production of goods for commerce: (a) there
> must be "production"; (b) such production must be of
> "goods"; (c) such production of goods must be "for
> commerce"; all within the meaning of the Act.

Thus, in order for the Plaintiffs to be considered employees who engaged in the

production of goods in commerce, the Plaintiffs' work must meet each of the three

prongs, "production," "goods" and "commerce" as defined by the FLSA.

### a. *Production*

Under the FLSA, "produced" is defined as, "manufactured, mined, handled, or in

any other manner worked on in any State; and for the purposes of [the FLSA], an

employee shall be deemed to have been engaged in the production of goods if such

employee was employed in producing, manufacturing, mining, handling, transporting, or

in any other manner working on such goods, or in any closely related process or

occupation directly essential to the production thereof, in any State." 29 U.S.C.A. §

203(j).

The regulations promulgated by the Department of Labor provide additional

clarification as to the definition of "production," and state that activities constituting

actual "production" under the statutory definition include not only the work involved in

making the products of mining, manufacturing, or processing operations, but also

include "handling, transporting, or in any other manner working on" goods. 29 C.F.R. §

776.16(b).  This is so, regardless of whether the goods are to be further processed or are

so-called "finished goods." *Id.*  The Supreme Court has stated that this language of the definition brings within the scope of the term "production," as used in the Act, "all steps, whether manufacture or not, which lead to readiness for putting goods into the stream of commerce," and "every kind of incidental operation preparatory to putting goods into the stream of commerce." *Western Union Telegraph Co. v. Lenroot*, 323 U.S. 490, 503 (1945).  *See also Johnston v. Spacefone Corp.* 706 F.2d 1178, 1181-2 (11th Cir. 1983) (recognizing that Supreme Court has held that "production" under the FLSA, is broader than the actual physical production of the product.)

The fact that the Plaintiffs in this case work for an independent employer rather than the rental car agencies that qualify as "producers," does not alter this result.  The regulations address this scenario and provide that the fact that employees doing particular work on behalf of such a producer are employed by an independent employer rather than by the producer will not take those workers outside the coverage of the Act if their work otherwise qualifies as the "production" of "goods" for "commerce." 29 C.F.R. § 776.19.

### b.  *Goods*

The Act defines, "Goods" as "goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."  29 U.S.C.A. § 203 (i).

### c.  *Commerce*

Under § 203 (b) of the FLSA,  "Commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States or between

19

any State and any place outside thereof."

This definition is further explained in 29 C.F.R. § 776.21, which provides,

> Goods are produced "for" such commerce where the
> employer intends, hopes, expects, or has reason to believe
> that the goods or any unsegregated part of them will move
> (in the same or in an altered form or as a part or ingredient of
> other goods) in such interstate or foreign commerce. If such
> movement of the goods in commerce can be reasonably
> anticipated by the employer when his employees perform
> work defined in the Act as "production" of such goods, it
> makes no difference whether he himself, or a subsequent
> owner or possessor of the goods, put the goods in interstate
> or foreign commerce. The fact that goods do move in
> interstate or foreign commerce is strong evidence that the
> employer intended, hoped, expected, or had reason to
> believe that they would so move.

### d. *Analysis of "Production," "Goods," and "Commerce" With Respect to the Activities in the Case at Bar*

Applying these three definitions, courts have found that employees are engaged

in the production of goods for commerce in factual scenarios akin to the case at bar.  In

*Hertz Drivurself Stations, Inc. v. United States,* 150 F.2d 923 (8th Cir. 1945), in addition to

finding that defendant's employees were engaged in commerce, the reviewing court

opined that the owner's servicing and repairing of motor vehicles, which were leased or

rented to others for use by them in interstate transportation, also constituted the

production of goods for commerce within the meaning of the Fair Labor Standards Act.

The court further concluded "any employee of an owner of automobile trucks or

passenger cars, which are leased to others for interstate use, whose work has 'a close

and immediate tie' with the process of keeping such vehicles generally in condition or in

readiness for such use, is engaged in the production of goods for commerce within the

meaning of the Fair Labor Standards Act." *Id*. at 926.[11]

Similarly, in *Mitchell v. Pascal System, Inc.*, 226 F. 2d 391 (7th Cir. 1955), the court cited *Hertz Drivurself* in reversing a district court's determination that employees were not covered under the FLSA, where the employees "perform[ed] necessary functions in maintaining and renting cars and trucks some of which furnish[ed] interstate 'transportation' for the individuals and firms who rent[ed] them," and "perform[ed] necessary services on cars that [we]re leased to industrial firms which use[d] them in the production of goods for commerce." *Id*. at 393.

Thus, in the case at bar, the Plaintiffs' work meets all three of the requirements necessary to conclude that the Plaintiffs were engaged in the production of goods for commerce.  It is undisputed that the Plaintiffs handled and transported the automobiles to enable the rental car companies to have the cars serviced so that they could again be rented or possibly sold.  Although the Defendants argue that because the Plaintiffs did not move the cars across state lines, their work is not part of the interstate commerce activity, as stated above, the Supreme Court has held that all steps that lead to readiness for putting goods into the stream of commerce brings that activity into the scope of production for FLSA purposes.

The cases cited by Plaintiffs wherein security guards are considered to be employees engaged in the production of goods for commerce and other similar cases

---

[11]*See also Slover v. Wathen*, 140 F.2d 258, 259-260 (4th Cir. 1944), where the court stated, "There can be no question, we think, but that the production of ships to operate in interstate and foreign commerce is a production for commerce, within the meaning of the statute. Nor can there be a valid distinction between building new ships and repairing old ships so far as the Act is concerned, since [the Act] provides that 'produced' includes 'handled or in any manner worked on in any State.'"

are directly on point.  See *Mitchell v. Central Produce Co.*, 239 F.2d 377 (6th Cir. 1956) (holding that night watchman of warehouse storing fruits and vegetables, 10% of which were ultimately sold out of state, was covered under FLSA); *Russell Co. v. McComb*, 187 F.2d 524 (5th Cir. 1951) (same, finding night watchman engaged in production of goods).  Courts have held that employees who neither personally produce goods nor transport them are nevertheless engaged in the production of goods for commerce within the meaning of the Act, if they perform a function that is necessary to the production of goods for commerce. *See, e.g., Mitchell v. Pascal System, Inc.*, 226 F.2d 391 (7th Cir. 1955*); Union National Bank of Little Rock, Arkansas v. Durkin*, 207 F.2d 848 (8th Cir. 1952); *Grant v. Bergdorf & Goodman Co.*, 172 F.2d 109 (2nd Cir. 1949).  In those cases maintenance workers and elevator operators in buildings where goods for commerce were produced were held to be engaged in the production of goods for commerce within the meaning of the FLSA.  This conclusion is not altered even if the employees involved are not employees of the firms that produced the goods.  *See D.A. Schulte v. Gangi*, 328 U.S. 108, 116-17 (1946) (finding building maintenance employees of building with tenants who "produced" goods were engaged in production for FLSA coverage).  *Accord*, *Kirschbaum v. Walling*, 316 U.S. 517 (1942) (same).

In addition, there has been no argument that automobiles are not generally "goods", although the Defendants argue that for purposes of enterprise coverage under the FLSA, that the "goods" in this case the automobiles, are excepted from the definition of goods because they were delivered to the ultimate consumer in this case, rental car agencies.  However, the definition of "goods" in section 203 (i) of the FLSA also provides that the "ultimate consumer" exception applies to an entity "*other than a producer*, manufacturer, or processor thereof." 29 U.S.C.A. § 203 (i) (emphasis added).

Thus, if the rental car agencies for whom the Plaintiffs provided services qualify as "producers", as defined by the FLSA, then the "ultimate consumer" exception does not apply to the automobiles that the Plaintiffs drove in the course of their work.  As discussed above, based upon the applicable case law, the car rental agencies, do qualify as "producers" under the relevant FLSA definitions and thus, the "ultimate consumer" definition is not applicable.[12]

Further, the Court disagrees with the Defendant's contention that the cases cited above only apply when the employees work directly for the "producer."  Rather, as noted previously, 29 C.F.R. § 776.19 allows for coverage under these circumstances even when the employees work for an independent employer rather than the producer. Thus, Plaintiffs' work falls within the scope of work performed by "employees" engaged in the production of goods for "commerce" as required for enterprise coverage under the FLSA.[13]

The cases cited by the Defendants do not alter this analysis and are factually distinct from the case at bar.  In *Thorne v. All Restoration Services, Inc.,* 448 F.3d 1264 (11th Cir. 2006), a case on appeal after the trial court granted a Rule 50 Motion to Dismiss in favor of the defendants, the Court concluded that the Plaintiff failed to produce sufficient evidence at trial that his use of a credit card for purchases made locally from a Home Depot, constituted an instrumentality of interstate commerce, rather than the purchase of goods that had previously moved in interstate commerce by

---

[12]  The undersigned notes that even if the car rental agencies were not considered to be "producers" of goods under the FLSA, that they still might not meet the "ultimate consumer" limitation because it is questionable whether the ultimate consumer is the car rental agency or the persons who rented or leased the vehicles from those agencies.

[13]  See discussion of "producer," *supra,* at 18.

an ultimate consumer. *Id.* at 1268.  The Court held that when goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further intrastate movement of goods are not covered by the Act.  *Id.* at 1267. In so holding, however, the Eleventh Circuit acknowledged that FLSA coverage extended to "maintenance employees of an independent employer who performs work directly essential to producers of commerce," and noted that employees typically covered in this group are "those who repair or maintain the machinery or buildings used by the producer in his production of goods for commerce and employees of a security force that protects the producer's premises." *Id.* at 1268.  Finally, the court drew a distinction between those employees whose employment had  a "close and immediate tie" with the process of production for commerce for their customer and those employees who merely provided services to a customer who happened to be a producer of goods for commerce.  *Id.*  Accord *Guzman v. Irmadan, Inc.*, 322 Fed. Appx. 644  (11th Cir. Mar. 27, 2009) (FLSA coverage not present where employee claimed he was engaged in interstate commerce because he occasionally purchased and transported building materials that had previously traveled in interstate commerce for use in the purely intrastate construction of cabinets).

Similarly, in *Navarro v. Broney Automotive Repairs Inc.*, 314 Fed. Appx. 179 (11th Cir. 2009), the Eleventh Circuit determined that the motor parts that Mr. Navarro transported and used to repair vehicles were no longer in the flow of interstate commerce after they arrived at the local auto parts stores.  Thus, the transportation and installation of the parts into the vehicles of Navarro's employer consisted purely of intrastate activity, and was not directed to placing those parts back into interstate commerce.

Neither of those cases concerned Plaintiffs involved in the preparation of "goods" for use by interstate travelers. Thus, under the facts of this case, it is manifest that the Plaintiffs worked for an enterprise that had employees engaged in the production of goods for commerce.

5.    Plaintiffs working on goods or materials that have been moved in or produced for commerce by any person

In their Motion for Summary Judgment, Plaintiffs primarily argue that the Defendants' business qualifies as an enterprise because the Defendants engage employees who are handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, as set forth in the second part of the enterprise definition under (s)(1)(A)(i).  It is this section of the definition for enterprise coverage that has been the source of extensive litigation, particularly in this district.  In fact, several cases have been consolidated and are currently on appeal before the Eleventh Circuit wherein various litigants have argued about when certain goods lose their interstate commerce qualities and simply become local goods that have reached the ultimate consumer and thus do not fall into the realm of FLSA enterprise coverage.[14] Many of those cases have held that once goods have reached the local level, then the mere fact that they once moved in interstate commerce does not convert the ultimate consumer sellers or local purchasers of those goods, or activities related to those goods, into the FLSA definition of "working on goods or materials that have been

_____

[14]  The following cases are currently on appeal, have been stayed or will be affected by the resolution of this issue: *Vallecio v. Wall to Wall Residence Repairs, Inc.* 595 F. Supp.2d 1374 (S.D. Fla. 2009), *Lamonica v. Safe Hurricane Shutters, Inc.*, 578 F. Supp. 2d 1363 (S.D. FLA. 2008), *Polycarpe v. E & S Landscaping Serv.*, Inc., 572 F. Supp. 2d 1318 (S.D. FLA. 2008), *Bien-Aime v. Nanak's Landscaping, Inc.*, 572 F. Supp. 2d 1312 (S.D. FLA. 2008); *Exime v. E.W. Ventures, Inc.*, 591 F. Supp. .2d 1364 (S.D. FLA. 2008) *Flores v. Nuvoc, Inc.*, 610 F. Supp. 2d, 1349 (S.D. FLA. 2008).

moved in or produced for commerce." Plaintiffs attempt to avoid this conclusion, by referring to the automobiles in this matter as "materials" as opposed to "goods" and point to the recent decision in *Diaz v. Jaguar Restaurant Group*, 2009 WL 1758709, *11 (S.D. Fla. June 22, 2009) for support of their position.  However, the undersigned concludes that the cars that Plaintiffs moved at the airport and that were rented to customers by the rental car agencies, do not meet the definition of "materials" as contemplated in the FLSA.

Several courts in this district have examined the legislative history of the bill where the words "or materials" were first introduced in the FLSA and have concluded that the clear Congressional intent of this addition was to include within coverage of the FLSA the handling of goods consumed in the employer's business, as, e.g., the soap used by a laundry. *See e.g. Exime v. E.W. Ventures, Inc.*, 591 F. Supp. 2d 1364 (S.D. FLA.2008) (*citing* S. Rep. No 93-690, 93rd Cong., 2nd Sess. at 17 (1974)) *Accord, Saucedo v. Phoenix Auto Sales, Inc.*, Case No. 08-21156-CIV-Altonaga (S.D. Fla. January 5, 2009).

Similarly, as noted in *Diaz v. Jaguar Restaurant Group*, 2009 WL 1758709, *11 (S.D. Fla. June 22, 2009), "materials" under this prong of the statute are not just "goods" as defined in § 203(i), "they are indeed 'materials' that are defined in customary English usage as:  '(1): the elements, constituents, or substances of which something is composed or can be made[;] something (as data) that may be worked into a more finished form[;] (2): apparatus necessary for doing or making something.'" *Id. citing Merriam-Webster Online Dictionary* (2009) and *American Heritage Dictionary* (4th ed. 2006).  Although at least one court in this district has seemingly viewed the sale of cars

as "materials" under the FLSA,[15] the undersigned concludes that the automobiles at issue in this case are not "materials" for purposes of the FLSA because they are not elements of the goods or goods that are consumed in the employer's business, rather they are the "goods" themselves.  Thus, they are not "materials" as argued by the Plaintiffs.

Second, there has been no evidence presented regarding the use of materials by the Plaintiffs in the execution of their job duties.  Although one Plaintiff, Manuel Pereira, stated in his affidavit that the Defendants provided all of the material and equipment to him that he used in the course of his job, there is no indication that, other than the rental automobiles, any of the items, e.g. cleaning supplies or equipment, used by the Plaintiffs, to the extent that there were any, were purchased from out of state or had not been obtained locally.  The dearth of this evidence is not surprising because the work conducted by the Plaintiffs primarily involved movement of the automobiles, which in this case were the "goods" with which Plaintiffs worked.  Thus, the cases involving the use of landscaping materials, cleaning and building supplies, or even car parts, are factually distinct from this case and do not assist in determining whether enterprise coverage applies in this instance. See *Bien-Aime v. Nanak's Landscaping, Inc.*, 572 F. Supp. 2d 1312 (S.D. Fla. 2008); *Lamonica v. Safe Hurricane Shutters, Inc.*, 578 F. Supp. 2d 1363 (S.D. Fla. 2008); *Flores v. Nuvoc, Inc.*, 2008 WL 5958357 (S.D. Fla. Nov. 20, 2008); *Vallecillo v. Wall to Wall Residence Repairs, Inc.*, 595 F. Supp. 2d 1374 (S.D. Fla. 2009).

However, and more important for the analysis of the case at bar, for the following reasons, the issues raised in those cases mentioned above simply do not apply in this

---

[15]  See *Saucedo v. Phoenix Auto Sales, Inc.*,  Case No. 08-21156-CIV-Altonaga (S.D. Fla. January 5, 2009, DE # 54)

case.  First, the crux of the issue in the cases on appeal is whether the goods at issue lost their interstate character by coming to rest in the hands of the ultimate consumer and thereby ending their interstate journey.  In contrast, in this matter, the "goods after their delivery into the actual physical possession of the ultimate consumer" limitation does not apply, because as previously discussed, the car rental agencies are in the business of producing cars for movement in interstate commerce, and thus are specifically excluded from that limitation.  It is undisputed that, at least with respect to one of the car rental agency clients of the Defendants, it was a common occurrence for cars to have come from out of state and be returned to the agency at the Fort Lauderdale Airport.  Therefore, this is not a case where the Plaintiffs purchased materials or goods from a local supplier and used them in a manner that had no part or connection to interstate commerce.

Simply put, in this case it is clear that the Plaintiffs' work on the automobiles had a role in causing those goods to continue to be moved in interstate commerce and thus, was not purely local in nature. Thus, the undersigned concludes that Plaintiffs also worked with goods that had previously been moved in or produced for commerce for purposes of enterprise coverage under the FLSA.

### C.   Individual Liability of Michael Dawson

Plaintiffs also seek summary judgment on the issue of the individual liability of Michael Dawson, if the Defendant Companies are found to be liable.  At the hearing on the Motion, the Defendants conceded that if the Defendant Companies are found to be liable under the FLSA, then pursuant to the applicable case law, Defendant Michael Dawson will also be found liable.

This concession is appropriate given that the Eleventh Circuit has held that a corporate officer with operational control of a corporation's covered enterprise is an

employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.  *Alvarez-Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008), *citing Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir.1986).

Thus, Plaintiffs' Motion for Summary Judgment is granted on this issue to the extent that if there is a determination at trial that the Defendant Companies are liable to the Plaintiffs for violations of the FLSA, then Defendant Michael Dawson will be liable as the corporate officer with operation control of the Defendant Companies.

D. **Plaintiffs as Independent Contractors**

In their Motion for Summary Judgment, Plaintiffs also request that this court find that the Plaintiff drivers were employees of the Defendants and not independent contractors.  Defendants argue in opposition that Plaintiffs were not employees of the Defendants as evidenced, in part, by the independent contractor agreements that each Plaintiff executed.

Neither party disputes that the FLSA does not apply to independent contractors. See *Murray v. Playmaker Servs. LLC*, 512 F. Supp. 2d 1273, 1276 (S.D. Fla. 2007). Rather, the FLSA only applies to an "employee," which is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1).  Because the FLSA is a remedial statute, courts apply an expansive definition of  "employee." *Molina v. South Florida Express Bankserv. Inc.*, 420 F. Supp. 2d 1276 (M.D. Fla. 2006) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 704 at 728 (1947); *W.J. Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308 at 1311 (5th Cir. 1976)); *see also Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343, 1348 (M.D. Fla.1997).

The FLSA defines "employ" as "to suffer or permit to work,"  29 U.S.C. § 203(g). Courts have held that "[a]n entity 'suffers or permits' an individual to work if, as a matter of economic reality, the individual is dependent on the entity." *Antenor v. D & S*

*Farms*, 88 F.3d 925, 929 (11th Cir.1996) (citation omitted).  Thus, the touchstone of "economic reality" in analyzing a possible employee/employer relationship for purposes of the FLSA is dependency." *Santelices v. Cable Wiring*, 147 F. Supp.  2d 1313, 1318 (S.D. Fla. 2001).

        In applying this "economic reality" test, courts look to a number of factors to distinguish employees from independent contractors.  These factors include: (1) the nature and degree of control of the workers by the alleged employer; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business.  *Santelices*, 147 F. Supp. 2d at 1319.  "No one factor is controlling, nor is the list exhaustive .... The weight of each factor depends on the light it sheds on the putative employee's dependence on the alleged employer, which in turn depends on the facts of the case." *Id. See also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947); *Freund v. Hi-Tech Satellite, Inc.*, 185 Fed. Appx. 782-83 (11th Cir. 2006).

        The undersigned has applied the economic realities test to the facts at bar and concludes that there are material issues of fact in dispute, as set forth below, regarding whether Plaintiffs were employees or independent contractors of the Defendant Companies.  This precludes a finding of summary judgment at this point.  Specifically, the undersigned has reviewed several factors, as follows:

### 1.  The nature and degree of control of Plaintiffs' work

        As to the first factor, the nature and degree of control of the employee, courts have examined whether workers may choose how much and when to work, whether

they may hire their own employees, whether they must wear uniforms, and how closely their work is monitored and controlled by the purported employer. *Molina* v. *So. Fla. Express Bankserv*, Inc., 420 F. Supp. 2d. 1276, 1285 (M.D. Fla. 2006) (citation omitted).

In this case, the Defendants contend that the Plaintiffs were hired as and worked as independent contractors.  In support of this claim, Defendants submitted a copy of the Independent Contractor Agreement from one of the Plaintiffs (DE # 73 at 9).  The Agreement provides that the Independent Contractor shall render services as an independent driver and will choose his/her work schedule based on the demands of the Company's clients.  In addition, the Agreement provides that the Independent Contractor  shall be paid a fee equal to $6.75 *per trip* for the work. (emphasis added). However, just as the mere existence of a document styled "employment agreement" should not lead inexorably to the conclusion that either party is or is not an employee, the fact that the Plaintiffs signed an "Independent Contractor Agreement" does not determine whether they are employees or not.  Rather that determination depends on "all of the incidents of the relationship ... with no one factor being decisive." *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992) (quoting *NLRB v. United Ins. Co. of America*, 390 U.S. 254, 258 (1968)).

In addition, the undisputed testimony from the owner of the Defendant Companies and their former secretary is that the Plaintiffs' supervisors provided the Plaintiffs with schedules and that the hours that Plaintiffs worked were tracked through the use of time cards and sign-in sheets that were signed by the supervisors.  Further, as noted by the undersigned at the hearing, by all accounts the Plaintiffs were paid by the hour and not  per trip as specified by the Independent Contractor Agreement.  There is little evidence in the record with respect to the daily activities of each specific plaintiff in terms of how their work was assigned or directed.  Thus, the evidence in the

31

record, at this point, is conflicting and does not provide sufficient details regarding the nature and degree of the Defendants' control over the Plaintiffs' work to determine whether the Plaintiffs were employees or independent contractors for purposes of this factor.

### 2.  Plaintiffs' opportunity for profit or loss

The testimony in the record establishes that Plaintiffs had no opportunity to participate in the profit or losses of the Defendant Companies in this matter.

### 3.  Plaintiffs' investment in equipment or materials required for task or employment of helpers

Similarly, the record is clear that the Plaintiffs did not invest in equipment or materials for the completion of their jobs.

### 4.  Whether the services rendered requires a special skill

There is no evidence that services rendered by the Plaintiffs required special skill other than the ability to drive and to hold a valid drivers' license.

### 5.  The degree of permanence of the working relationship

There is no evidence that there was any contractual permanency to the working relationship between the Parties.  However, it is undisputed that the Plaintiffs all worked for the TFC-RB and the predecessor company for, at least, two years, and there is no indication that the Plaintiffs' work would naturally conclude at some set time in the future.  Thus, in this regard, the Plaintiffs seemingly maintained an on-going working relationship with the Defendant which weighs in favor of finding the Plaintiffs to be employees.

### 6.  Whether the services rendered were an integral part of the alleged employer's business

Based upon the deposition testimony of the owner of the Defendant Companies,

it is clear that the services rendered by the Plaintiffs were not only integral but the entirety of the Defendant employers' business.  Thus, this factor also weighs in favor of finding that the Plaintiffs were employees.

However, it is significant that the Plaintiffs have failed to provide virtually any evidence to indicate whether the "economic reality" was that the individual Plaintiffs were dependent upon the Defendants for their livelihood.  Rather, the Plaintiffs have merely submitted the Affidavit of one Plaintiff, Manuel Pereira, which states that he worked only for the Defendants during the relevant time period (DE # 78-1).  However, this statement, in and of itself, is not sufficient to determine that Mr. Pereira was an employee of the Defendants, and certainly provides no evidence regarding the economic realities of the other Plaintiffs.[16]

Thus, based upon the foregoing, although several factors weigh in favor of finding that the Plaintiffs were in fact employees, it is clear that there remain material issues of fact in dispute related to the nature and condition of the Plaintiffs' working conditions that preclude granting summary judgment.[17]

### E.    Retaliatory Discharge

Defendants seek summary judgment on the issue of Count II of the Plaintiffs' Eighth Amended Complaint which alleges that Plaintiff Manuel Pereira was terminated

---

[16] Moreover, the Affidavit was provided in response to the issue regarding retaliation and thus, Defendant did not have an opportunity to rebut this assertion.

[17] Plaintiffs also requested that the undersigned make a finding of liability as to the Corporate Defendants on summary judgment and allow the jury to make a determination as to damages.  However, based on the lack of undisputed evidence to establish that Plaintiffs were "employees" rather than "independent contractors,"  and the inability of Plaintiffs' counsel to point to evidence in the record that any Plaintiff, except Pereira, worked more than forty hours per week, summary judgment as to liability is not appropriate.

in retaliation for his participation in the instant law suit.  At the hearing, Defendants conceded that summary judgment was not appropriate on this issue based upon the Affidavit filed Plaintiff Pereira in opposition to the Motion.  As discussed below, this concession is well-founded.

Pursuant to the burden shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), in order to prevail on a retaliation claim, a plaintiff must first establish a prima facie case of retaliation. *Raspanti v. Four Amigos Travel, Inc.*, 266 Fed. Appx. 820, 2008 WL 227590 (11th Cir. 2008) (citing *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000)). The employer then must articulate a legitimate non-retaliatory reason for the adverse employment action.  *Id.*  If the employer meets this burden of production, then the plaintiff must establish that the proffered reason is pretextual. *Id.*

Further, under the FLSA, it is "unlawful for any person ... to discharge ... [an] employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). A claimant establishes a prima facie case under Section 215(a)(3) by establishing three elements: "(1) she engaged in activity protected under the act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Raspanti v. Four Amigos Travel, Inc.*, 266 Fed. Appx. 820, 2008 WL 227590 (11th Cir.2008) citing *Wolf*, 200 F.3d at 1342-43. The Defendant has not disputed that the first two elements in this case are satisfied. Thus, the undersigned only addresses the final element of causation.

To establish a causal relation, Plaintiff Pereira would have to show that he would not have been fired but for his assertion of FLSA rights.  A plaintiff can satisfy this

34

burden if he can prove a "close temporal proximity" between the time his employer learned about his protected activity and his discharge. *Id.* (citations omitted). This standard requires that the actions be "very close." *Id.* (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). A delay of "three to four month[s]" does not suffice. *Id.* (citations omitted).

In this case, Defendants maintain that Manuel Pereira was fired for being lazy because one of the supervisors from Dollar said that Mr. Pereira wasn't doing his job. In her deposition, Adrianna Castillo asserted that Mr. Pereira made threats against her and her mother, Heidi Gonzalez, who was a supervisor for the Defendant Companies. Ms. Castillo stated that she filed a police report against Mr. Pereira. In addition, Ms. Castillo testified that Mr. Dawson did not know about Mr. Pereira joining the FLSA law suit before Mr. Pereira was fired. She further denied that Mr. Pereira complained to her about not being paid overtime.

In response to Defendants' Motion for Summary Judgment on this issue, the Plaintiffs have submitted the Affidavit of Manuel Pereira wherein he states that he was retaliated against after he joined the instant law suit on June 30, 2008 (DE 78-1). Specifically, he asserts that after the filing on June 30, 2008 of the Second Amended Complaint where he was named as a Plaintiff, his supervisor reduced his hours from the 68-72 hours per week that he typically worked to 40 hours per week. Mr. Pereira states that he was fired on August 29, 2008. Also, Mr. Pereira denied that he ever threatened Ms. Castillo, or her mother Heidi Gonzalez and has no knowledge of a complaint being filed against him at the Broward Sheriff's office. Mr. Pereira contended that he was not fired because he was lazy and that he always performed the work that he was assigned.

Thus, in this case, Mr. Pereira asserts that he was discharged within two months or Mr. Dawson becoming aware that Mr. Pereira had joined the FLSA law suit. Therefore,  given the relatively sparse nature of the record on this issue and as conceded by the Defendant at the oral argument on the Motion for Summary Judgment, because Mr. Pereira, through his affidavit, has specifically denied the allegations made by the Defendants, there exists a genuine issue of material fact on the retaliation claim which mandates that summary judgment be denied on this issue.

IV.   <u>CONCLUSION</u>

For the above reasons, the undersigned concludes that the Plaintiffs have demonstrated that there is no genuine issue as to any material fact as to: 1) the existence of jurisdiction under the FLSA; and, 2) the individual liability of Defendant Michael Dawson.

Therefore, it is hereby

**ORDERED AND ADJUDGED** that  Plaintiffs' Motion for Partial Summary Judgment (DE # 64) against Defendants is **GRANTED, in part**.  The claims of the Plaintiffs are within the jurisdiction of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-216, since the Defendant Companies qualify as an enterprise engaged in commerce or in the production of goods for commerce pursuant to that Act.  Also, to the extent that the Defendant Companies are found to be liable for violations of the FLSA, the individual Defendant, Michael Dawson, is jointly and severally liable.  The Plaintiffs' Motion for Summary Judgment is **DENIED** on all other grounds.  It is further

**ORDERED AND ADJUDGED** that  Defendants' Motion for Summary Judgment

36

(DE #74) is **DENIED.**

      **DONE AND ORDERED** in chambers in Miami, Florida, on November 4, 2009.


                                     _____
                                       ANDREA M. SIMONTON
                                       UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
      **All Counsel of Record via CM/ECF**