UNITED STATES DISTRICT COURT SOUTHER DISTRICT OF FLORIDA
CASE NO.: 08-21352-CIV-UNGARO/SIMONTON

**ANDRES VARGAS RODILLA; ROBERTO CHAMORRO; RICARDO LOZO; GUILLERMO SALA; JULIO ABREU, MANUEL PEREIRA, MARIA E. GIRALDO, JOSE JIMENEZ, OMAR CANO, JOEL RODRIGUEZ, WILLIAM EDGARDO LANDIETA, MARIA CAROLINA MARTIN, JAIRO ENRIQUES RODRIGUEZ, and all other similarly situated under 29 USC 216(B),**

       **Plaintiffs,**

vs.

**TFC-RB. LLC, FLORIDA JET AVIATION CLEANING SERVICES, INC., MICHAEL DAWSON,**

       **Defendants.**

_____/

### NON-PARTIES, ADRIANA CASTILLO AND M.D. CLEANING AND TRANSPORT, INC.'S, MOTION TO QUASH AND FOR PROTECTIVE ORDER IN RESPONSE TO THE SUBPOEAS FOR DEPOSITION IN AID OF EXECUTION *DUCE TECUM*

Non-Parties, Adriana Castillo ("Castillo") and M.D. Cleaning and Transport, Inc. ("MD Cleaning"), by and through their undersigned counsel and pursuant to Rules 26(c), 45(d) and (e) and 69(a) Fed.R.Civ.P., hereby file this, their Motion to Quash and for Protective Order in Response to the Subpoenas for Deposition In Aid of Execution *Duces Tecum* served upon them, and state:

### Introduction

The underlying action was brought in 2008 by former employees against their former employers for unpaid overtime wages pursuant to Fair Labor Standards Act. On November 20, 2009, a consent final judgment was entered in the instant action in favor of Plaintiffs ("Judgment

Creditors") against Defendants, TFC-RB, LLC; Florida Jet Aviation Cleaning Services, Inc. ("Florida Jet Cleaning"); and Michael Dawson ("Dawson") (and collectively referred to as "Judgment Debtors"), jointly and severally, in the amount of $215,000.00.

In an attempt to execute on the judgment entered nearly seven (7) years ago, Judgment Creditors served Non-Parties, Castillo and MD Cleaning, with Subpoenas for Depositions in Aid of Execution ("Subpoenas in Aid of Execution"). Copies of the Subpoenas in Aid of Execution are attached hereto as Composite Exhibit "A".

The Subpoenas in Aid of Execution do not state which, if any, Rule of Federal Procedure pursuant to which they are served or whether they are served pursuant to Florida Statutes. Rather, each of the Subpoenas in Aid of Execution sets forth 60 voluminous requests for documents (for 120 requests in total) relating to Castillo and MD Cleaning's bank records, real property, personal property, business interests, employment, tax returns, and investments and require Castillo and MD Cleaning to appear for deposition concerning their personal financial records.

The Subpoenas in Aid of Execution do not met the basic procedural requirements to implead third parties, Castillo and MD Cleaning, in proceedings supplementary. In fact, to date, there is no docket entry that indicates that Judgment Creditors have initiated proceedings supplementary. Castillo and MD Cleaning were never served with any such notice.

Even if initiated, it would be abundantly clear that based upon the Affidavit of Castillo: Castillo and MD Cleaning have no connection to any of the Judgment Debtors; Judgment Debtors have no direct or indirect ownership or other interest in MD Cleaning or Castillo; neither Castillo nor MD Cleaning has ever had any assets belonging to Judgment Debtors; After Castillo resigned from Florida Jet Cleaning, Castillo and MD Cleaning have had no dealings whatsoever

with Judgment Debtors; and Castillo and MD Cleaning are not the alter ego of any of the Judgment Debtors.

Furthermore, even if the Subpoenas were proper, the requests for documents are overbroad, unduly burdensome, and constitute harassment.

As a result, the Subpoenas in Aid of Execution must be quashed or, in the alternative, prohibited or severely limited via protective order as to the scope of required responsive documents and testimony.

### Facts[1]

1. Castillo is the President of MD Cleaning.

2. Castillo formed MD Cleaning on or about November 13, 2008.

3. Prior to forming MD Cleaning, Castillo was an employee of the Florida Jet Cleaning.

4. The Principal of Florida Jet Cleaning was Dawson.

5. Florida Jet Cleaning's prior business was cleaning rental cars for 5 of the rental car companies located at the Fort Lauderdale International Airport, to wit: Avis, Budget, Dollar, Enterprise, and Thrifty.

6. Florida Jet Cleaning failed to pay its expenses and wages owed to employees, including wages owed to Castillo.[2]

7. Castillo resigned as a result of not being paid the wages she was owed. Castillo still has a check for wages from Florida Jet Cleaning that was returned as nonsufficient funds (NSF). A copy of such check is attached hereto as Exhibit "C".

---

[1] The Facts set forth below are also set forth in Exhibit "B", the Affidavit of Adriana Castillo.
[2] Florida Jet Cleaning's failure to pay its employees wages lead to the filing of the instant action
[2] Florida Jet Cleaning's failure to pay its employees wages lead to the filing of the instant action and the resulting Consent Judgment.

8. As a result of not paying its vendors and employees (and the employees, in turn, refused to clean the cars), Florida Jet Cleaning lost all of its rental car company customers.

9. After leaving her employment with Florida Jet Cleaning, Castillo formed MD Cleaning.

10. Castillo formed MD Cleaning in order to bid on the car cleaning work that Florida Jet Cleaning lost.

11. MD Cleaning bid on the rental car cleaning work for all the rental car companies located at the Fort Lauderdale International Airport and won the bids for Avis and Budget.

12. MD Cleaning began cleaning the rental cars for Avis and Budget in January of 2009.

13. On March 17, 2009, Dawson, through MB Translogistics, Inc., sued MD Cleaning, Castillo (individually), and MD Cleaning's other shareholder, Haydee Gonzalez (Castillo's mother), in the Broward County Circuit Court in Case Number 09-015512 (12) for breach of loyalty and intentional interference with an advantageous business relationship in connection with MD Cleaning winning the bid for Avis and Budget (Florida Jet Cleaning's prior customers)(hereinafter the "Circuit Court Action").

14. The Circuit Court Action was dismissed with neither MD Cleaning, Castillo, nor Haydee Gonzalez paying or receiving any monies.

15. At no time have Judgment Debtors ever had any direct or indirect ownership interest in MD Cleaning.

16. At no time have MD Cleaning or Castillo, whether directly or indirectly, had any monies or assets belonging to Judgment Debtors in their possession, custody or control.

17.	At no time have MD Cleaning or Castillo, whether directly or indirectly, ever owed money or other goods, services, or assets to Judgment Debtors.

18.	At no time after Castillo resigned from Florida Jet Cleaning have Castillo or MD Cleaning had any dealings whatsoever with any of the Judgment debtors

19.	MD Cleaning is not the alter ego of any of the Judgment Debtors.

20.	There is nothing for which the Judgment Creditors may execute against Castillo or MD Cleaning, as neither Castillo nor MD Cleaning ever received anything from Judgment Debtors after Castillo resigned from Florida Jet Cleaning.

21.	In contrast, Castillo could have and should have been a plaintiff (and thus a Judgment Creditor) in the instant action that was brought by Plaintiffs pursuant to the Fair Labor Standards Act for unpaid overtime wages, as the underlying action was brought on behalf of "all persons similarly situated under 29 USC 216(B)" -- as Florida Jet Cleaning, failed to pay Castillo wages owed, including overtime wages. Moreover, wages paid to Castillo were returned as NSF. See Exhibit "C".

22.	The foregoing facts are set forth in Exhibit "B" the Affidavit of Adriana Castillo.

I.	**The Subpoenas in Aid of Execution must be quashed as a matter of law. Judgment Creditors have not initiated Proceedings Supplementary as to Castillo or MD Cleaning pursuant to Rule 69(a)(1), Fed.R.Civ.P. and §56.29(1), Fla. Stat.**

The Subpoenas in Aid of Execution do not state which, if any, Rule of Federal Procedure for which they are served or whether they are served pursuant to Florida Statutes. However, the 60 voluminous requests for documents (for 120 requests in total) relating to Castillo and MD Cleaning's bank records, real property, personal property, business interests, employment, tax returns, and investments and require Castillo and MD Cleaning to appear for deposition concerning their personal financial records appear be served pursuant to Rule 69(a)(1),

Fed.R.Civ.P.

Rule 69(a)(1), Fed.R.Civ.P., states "[a] money judgment is enforced by writ of execution, unless the court directs otherwise. The procedure on execution – and in proceedings supplementary to and in aid of judgment or execution- must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."

Florida Statute governs proceedings supplementary. *Bally Case & Cooler, Inc. v. K. Kaiser Associates, Inc.,* 514 F. Supp. 353 (S.D. Fla. 1981).

§56.29(1), Fla. Stat. Proceedings Supplementary states:

> "[w]hen any person or entity holds an unsatisfied judgment or judgment lien obtained under chapter 55, the judgment holder or judgment lienholder may file a motion and an affidavit so stating, identifying, if applicable, the issuing court, the case number, and the unsatisfied amount of the judgment or judgment lien, including accrued costs and interest, and stating that the execution is valid and outstanding, and thereupon the judgment holder or judgment lienholder is entitled to these proceedings supplementary to execution."

The proper procedure is to obtain an order of impleader by motion. *State ex rel. Phoenix Tax Title Corp. v. Viney*, 120 Fla. 657, 163 So. 57 (1935). If the judgment creditor has a claim or demand against property in which the third party has or may have an interest, the third party must be impleaded so they can set forth any defense they have and provide evidence in support. Otherwise, orders in proceedings supplementary are not binding. *Ryan's Furniture Exchange v. McNair*, 120 Fla. 109, 162 So. 483 (1935); *Kornberg v. Krupka*, 118 So.2d 790 (Fla. 3d DCA 1960).

"The duty to implead third parties whose interests may be affected by the court's ruling enables the court to acquire jurisdiction over them and affords them the essential elements of due process of law." *Bally Case & Cooler, Inc. v. K. Kaiser Associates, Inc.,* 514 F. Supp. 353, 354

(S.D. Fla. 1981).

In the instant action, the Judgment Creditors have not met the basic procedural requirements to implead MD Cleaning or Castillo as third parties in proceedings supplementary. Given the above referenced facts, such a motion would be futile.

As a result, Castillo and MD Cleaning respectfully request that the Court enter an order quashing the Subpoenas in Aid of Execution.

**II.  The Subpoenas in Aid of Execution must be quashed as a matter of law. Judgment Creditors do not seek relevant information from Castillo or MD Cleaning. Judgment Creditors do not and can not show that Castillo or MD Cleaning are the alter ego of any of the Judgment Debtors, have or had any assets belonging to any Judgment Debtor by Transfer or Otherwise, or had any dealings with any of Judgment Debtors as required for Judgment Creditors to seek Personal Financial Information of Castillo or MD Cleaning pursuant to Rules 45(c) and 69(a)(2), Fed.R.Civ.P. and Rule 1.560, Fla.R. Civ.P.**

As set forth by this Court in *Pronman v. Styles,* 2016 WL 1156770 (S.D. Fla. 2016), both Rule 69(a)(2), Fed.R.Civ.P. and Rule 1.560, Fla.R.Civ.P. apply to and govern discovery in aid of execution as to non-parties.

In *Pronman,* the judgment creditor served a subpoena in aid of execution upon the father of the judgment debtor's spouse in connection with an alleged fraudulent transfer of the judgment debtor's assets. Specifically, the father made a $300,000.00 loan to his daughter (the spouse of the judgment debtor) and recorded a mortgage on his daughter's home on the eve of the adverse summary judgment. The mortgage was satisfied three (3) months later.

The father moved to quash the subpoena in aid of execution. In connection therewith, the father submitted an affidavit in which he stated that he loaned his daughter $300,000.00 to buy a house, she secured a mortgage, and upon the sale of the home, the daughter satisfied the mortgage with proceeds of the sale that were paid to the father by the closing company. The Father further stated that he never loaned any monies to the judgment debtor, never received any

money from the judgment debtor, and had no financial dealings with the judgment debtor. The loan was between him and his daughter (the wife of the judgment debtor).

This Court quashed the subpoena in aid of execution. In so doing, this Court stated that the judgment creditor is not seeking relevant information. The transaction did not support a fraudulent loan. Because judgment creditor now has the father's testimony regarding the transaction by way of a notarized affidavit, the father's deposition testimony is not only irrelevant, but also wholly unnecessary. In so holding, this Court stated that ". . . this Court will not allow discovery in aid of execution [against a nonparty] . . . unless the discovery is relevant to the collection of the debt owed." *Id.* at 3.

Other federal courts have had similar holdings. In *Strict Corp. v. Tai Teak Products Co., Ltd.,* 493 F. Supp. 1210, 1218 (E.D. Penn. 1980), the court stated, relying upon *Magnaleasing Inc. v. Staten Island Mall,* 76 F.R.D. 559 (S.D.N.Y. 1977), that discovery of assets of a nonparty is not generally contemplated by Rule 69(a), but would be permitted only where the relationship between the judgment debtor and the nonparty is sufficient to raise a reasonable doubt about the bona fide transfer of assets.

In *General Electric Corp. v. General Electric Capital Corp.,* 124 So.2d 940, 943 (Fla. 2nd DCA 2013), the court quashed a subpoena issued upon a nonparty. In so doing, the court stated that a "subpoena duces tecum is not the equivalent of a search warrant and should not be used as a fishing expedition to require a witness to produce broad categories of documents which the party can search to find what may be wanted. This is especially true when the person subject to the subpoena is not the judgment debtor." (Citations omitted).

The court went on to state that "[t]his court has held that discovery in aid of execution cannot be used to pry into the assets and business of persons other than the judgment debtor,

unless the judgment creditor can provide a good reason and close link between the unrelated entity and the judgment debtor." (Citations omitted). *Id.* at 942.

In *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991), the court found that there was no abuse of discretion in granting a protective order against the taking of the deposition of Elvis Presley's former wife, where she had submitted an affidavit stating that she had no knowledge of defendant's activity prior to filing of the action.

In the instant action, Judgment Creditors can show absolutely no connection between Castillo and MD Cleaning on one hand and the judgment debtors on the other hand. As set forth in the Affidavit of Castillo:

1. At no time have Judgment Debtors ever had any direct or indirect ownership interest in MD Cleaning.

2. At no time have MD Cleaning or Castillo, whether directly or indirectly, had any monies or assets belonging to Judgment Debtors in their possession, custody or control.

3. At no time have MD Cleaning or Castillo, whether directly or indirectly, ever owed money or other goods, services, or assets to Judgment Debtors.

4. At no time since Castillo resigned from Florida Jet Cleaning has Castillo or MS Cleaning had any dealing whatsoever with any of the Judgment Debtors.

5. MD Cleaning is not the alter ego of any of the Judgment Debtors.

6. There is nothing for which the Judgment Creditors may execute against Castillo or MD Cleaning, as neither Castillo nor MD Cleaning received anything from any of the Judgment Debtors since Castillo resigned from Florida Jet Cleaning.

7. In contrast, Castillo could have and should have been a plaintiff in the instant action that was brought by Plaintiffs pursuant to the Fair Labor Standards Act for unpaid overtime wages (and thus a Judgment Creditor), as the underlying action was brought on behalf of "all persons similarly situated under 29 USC 216(B)" -- as Florida Jet Cleaning failed to pay Castillo wages owed, including overtime wages. Moreover, wages paid to Castillo were returned as NSF. See Exhibit "C".

As in *Pronman v. Styles,* 2016 WL 1156770 (S.D. Fla. 2016), this Court should quash the Subpoenas in Aid of Execution, as Castillo and MD Cleaning's sworn testimony set forth in the Affidavit makes any further deposition testimony or production of documents not only irrelevant, but wholly unnecessary.

**III. This Court Should Enter a Protective Order. Judgment Creditors do not seek relevant information from Castillo or MD Cleaning. Judgment Creditors do not and can not show that Castillo or MD Cleaning are the alter ego of any of the Judgment Debtors, have or had any assets belonging to any Judgment Creditor by Transfer or Otherwise, or had any dealings with any of Judgment Debtors as required for Judgment Creditors to seek Personal Financial Information of Castillo or MD Cleaning pursuant to Rules 26(c), 45(d) and (e) and 69(a)(2), Fed.R.Civ.P. and Rule 1.560, Fla.R. Civ.P.**

"The decision to enter a protective order is within the court's discretion and does not depend on a legal privilege. *Farmsworth v. Proctor & Gamble Co.,* 758 F.2d 1545, 1548 (11th Cir. 1985). Rule 26(c) provides that upon showing of good cause, a court 'may make any order when justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Auto Owners Insurance Co. v. Southeast Floating Docks, Inc.,* 231 F.R.D. 426 (M.D. Fla. 2005).

"Pursuant to Rule 45(c), an attorney issuing a subpoena must take reasonable steps to avoid imposing an undue burden on a person subject to subpoena . . . courts consider the following factors: relevance, the requesting party's need for the documents, the breath of the

document request, and the time period covered by the request." *American Airlines, Inc. v. In Charge Marketing,* 2012 WL 2116349 (U.S.M.D. Fla. 2012) citing *Farmsworth v. Proctor & Gamble Co.,* 758 F.2d 1545, 1548 (11th Cir. 1985).

In *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.,* 936 F.2d 889, 894 (6th Cir. 1991), the court found that there was no abuse of discretion in granting protective order against taking deposition of Presley's former wife, where she had submitted an affidavit stating that she had no knowledge of defendant's activity prior to filing of the action.

Based upon *Auto Owners Insurance Co. v. Southeast Floating Docks, Inc.,* 231 F.R.D. 426 (M.D. Fla. 2005), *Auto Owners Insurance Co. v. Southeast Floating Docks, Inc.,* 231 F.R.D. 426 (M.D. Fla. 2005), and *American Airlines, Inc. v. In Charge Marketing,* 2012 WL 2116349 (U.S.M.D. Fla. 2012) and for the same reasons and arguments set forth above, this Court should enter an Order protecting MD Cleaning and Castillo from producing any document or appearing at deposition.

**IV.    Alternatively, if this Court does not grant the instant Motion based upon the Arguments set forth above, this Court Should Enter a Protective Order severely limiting the scope of the requested documents and the testimony of Castillo and MD Cleaning solely as to any dealings with Judgment Debtors after Castillo resigned from Florida Jet Cleaning (which there are non) pursuant to Rules 26(c), 45(d) and (e) and 69(a)(2), Fed.R.Civ.P. and Rule 1.560, Fla.R. Civ.P.**

Each of the Subpoenas in Aid of Execution sets forth 60 voluminous requests for documents (for 120 requests in total) relating to Castillo and MD Cleaning's bank records, real property, personal property, business interests, employment, tax returns, and investments and require Castillo and MD Cleaning to appear for deposition concerning their personal financial records.

Judgment Creditors, evidencing the fact that these are stock requests for documents not tailored at all for the instant action or Castillo or MD Cleaning, in the definition section refer to

Castillo and MD Cleaning as "Defendants" and further define the term Defendants as to Castillo, MD Cleaning, and all the Judgment Debtors.

In addition to the foregoing definition concern and objection, are the following requests for documents:

### BANK RECORDS

1. Any and all documents and records of checking, savings, or any other type of account, foreign or domestic maintained by Defendant(s) with any type of financial institution during the last two years, including but not limited to monthly account statements, checks, check registers, check stubs, canceled checks, and deposit slips.

2. All documents that refer, to reflect or relate to any transfers made from any financial account held for the benefit of Defendant(s) by any third party, for the last two years.

3. Any and all signature cards that name Defendant(s) as an authorized signatory on any financial account for any entity or other third party, for past two years.

4. Any and all documents submitted to any bank financial institution, or any other person or entity, by Defendant(s) for any loan or advance, in any capacity (borrower, guarantor or surety) for the past two years.

5. Any and all documents concerning any interest in or claimed title to, any certificates of deposit, letters of credit, money orders, cashier's checks, traveler's checks, bank deposits, escrow funds owned or held by Defendant(s) in the past two years.

6. Any and all documents related to any account into which any of Defendant(s) earnings or other income has been deposited in the past two years.

7. Any and all documents evidencing Dcfendant(s) having authority to access any safe deposit box or other bank secured area, for the past two years.

8. Copies of Defendant(s) last 20 months banks statements.

### REAL PROPERTY

9. Any and all documents that refer to, reflect, or relate to any real property owned by Defendant(s) in the past two years.

10. Any and all documents that refer to, reflect, or relate to encumbrances on any real property owned by Defendant(s).

11. Any and all documents evidencing ownership of real property in which

       Defendant(s) currently enjoy a direct or indirect beneficial interest.

12. Any and all checks, receipts, deeds, or other evidence of the sale or transfer of any real property in which Defendant(s) had a legal or equitable ownership interest, within the past two years.

13. Any and all lease agreements for real property in which Defendant(s) is the landlord or have a beneficial interest.

14. Any and all lease agreements for real property in which Defendant(s) is the lessor or lessee.

15. Any and all documents that evidence Defendant(s) name being on any real property tax records, as payor or trustee, for the past two years.

16. Any and all deeds that title any real property to Defendant(s) as trustee for any other person or entity.

17. Any and all deeds of trust or mortgages held in favor of Defendant(s) at present or owned during the last five years.

18. Any and all documents evidencing any time-share property that Defendant(s) enjoy the use of.

19. Copies of any appraisals or other forms of valuation for any property that Defendant(s) has an interest in or held any inters in within the past three years.

20. Promissory notes or mortgages Defendant(s) signed during the past three years.

21. Copies of all deeds and mortgages to which Defendant(s) currently holds property as tenant by the entireties, tenant in common or joint tenant.

**PERSONAL PROPERTY**

22. Certificate of title or other evidence of ownership of any boat, watercraft, motorcycle, four wheeler, recreational vehicle, go-kart, aircraft, agricultural equipment, or construction equipment owned by or in possession of Defendant(s) whether owned by Defendant(s) or any entity that Defendant(s) is/are affiliated with, or held in trust by Defendant(s).

23. Any and all note receivables, pledges or security interests in favor of Dcfendant(s) now and in the past three years.

24. Copies of all homeowner's insurance policies and other insurance policies or riders that have insured any property that Defendant(s) owns or has the benefit or sue of, for the past two years.

25. Copies of all dock slips or other documentation evidencing the right to dock any watercraft in which Defendant(s) has a legal or beneficial interest.

26. List and valuation of all collectibles (e.g. stamps, coins, sports cards, etc.) that Defendant(s) now own or have owned within the past two years.

27. Any and all documents that refer or relate to any guns, jewelry, antiques, art, paintings, or other similar assets owned by Defendant(s) possession within the past two years.

28. Any and all documents evidencing any interest Defendant(s) may have in any patents, trademarks, copyrights, franchises, royalties of any kind, oil and gas rights, timber rights or mineral rights.

29. Any Certificate of title or other evidence of ownership in any car or vehicle(s) owned by or in possession of Defendant(s) whether owned by Defendant(s), or any entity that Defendant(s) affiliated with, or held in trust by Defendant(s).

**BUSINESS INTEREST**

30. All documents referring in any way, directly or indirectly, to any and all businesses in which Defendant(s) is a member, managing member, stockholder, partner, officer, director, owner, or registered agent.

31. All local, state, and federal tax returns filed by Defendant(s) in the past three years, including all attachments, schedules, W-2's, K-1's, and 1099 and 1098 forms.

32. All documents referring or pertaining to any records of salaries, commissions, bonuses, income from employment, wages, pay stubs, dividends, royalties, allowances, expenses, or other sums of money paid to Defendant(s) within the past three years.

33. Any and all employment contracts that Defendant(s) has had in the past two years.

34. Copy of all documents showing a transfer of any funds and/or assets from Defendant(s) to anyone else or to any business in the last two years.

**EMPLOYMENT**

38. All documents that identify the name and address of any person or entity that has employed Defendant(s) within the past two years.

39. All documents that identify any person or entity for whom Defendant(s) has acted as independent contractor within the past two years.

40. Any and all employment contracts that Defendant(s) has entered into for the past two years.

41. All local, state, and federal tax returns filed by Defendant(s) in the past two years, including all attachments, schedules, W-2's, K-1;s and 1099 and 1098 forms. 42. All banking deposits for Defendants for the past twelve months.

42. All contracts where Defendant(s) is providing services, within the past twelve months.

43. List of your customers, for the past two years.

**TAX RETURNS**

45. Federal tax returns filed by Defendant(s) for 2014, including all attachments, schedules, W-2's, K-l;s and 1099 and 1098 forms.

46. Federal tax returns filed by Defendant(s) for 2013, including all attachments, schedules, W-2's, K-l;s and 1099 and 1098 forms.

47. Federal tax returns filed Defendant(s) for 2012, including all attachments, schedules, W2's, K-l;s and 1099 and 1098 forms.

48. Profit and Lost Statement of Defendant(s) for 2015.

49. Copy of Cash Flow Statement of Defendant(s) the past 3 years.

50. Account Receivables for Defendant(s) for the past 3 years.

**INVESTMENTS**

51. Any and all documents and records of stocks, bonds, mutual funds, debentures, certificates of deposit or other investment vehicle owned by or held for Defendant(s) benefit.

52. Any and all rent rolls for the properties in which Defendant(s) had an ownership interest for the past three years.

53. Copies of all 1099-D or 1099-1 forms issued to Defendant(s) within the past three years.

54. Any and all documents referring to any stock options or profit-sharing plans held by Defendant(s) or for the benefit of Defendant(s).

55. All documents referring to or reflecting the name and address of any storage facility or mini-warehouse to which Defendant(s) has access in which it stores products belonging to Defendant(s).

56. Copies of any and all financial statements Defendant(s) has prepared for any lender or creditor in the past three years.

57. Copies of any and all professional licenses held by Defendant(s).

58. Copies of all Lease Agreements entered on behalf of you or Defendant(s).

59. Copies of all outstanding invoices owed to Defendant(s).

As can easily be seen from the foregoing requests, counsel for Judgment Debtors did not take reasonable steps to avoid imposing an undue burden on Castillo and MD Cleaning, as

required by Rule 45(c). Instead, counsel "threw the kitchen sink" at Castillo and MD Cleaning – using caned requests and lumping them in as "Defendants" with Judgment Debtors.

"The decision to enter a protective order is within the court's discretion and does not depend on a legal privilege. *Farmsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985). Rule 26(c) provides that upon showing of good cause, a court 'may make any order when justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Auto Owners Insurance Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426 (M.D. Fla. 2005).

As set forth above, in *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889 (6th Cir. 1991), the court found that there was no abuse of discretion in granting protective order against taking deposition of Presley's former wife, where she had submitted an affidavit stating that she had no knowledge of defendant's activity prior to filing of the action.

Given the voluminous canned requests for documents, Castillo and MD Cleaning's sworn testimony as set forth in the Affidavit, and the fact that Castillo herself should have been a Judgment Creditor, this Court should protect Castillo and MD Cleaning from the annoyance, embarrassment, oppression, and undue burden and expense of responding to such voluminous and wholly irrelevant document requests pursuant to *Auto Owners Insurance Co. v. Southeast Floating Docks, Inc.,* 231 F.R.D. 426 (M.D. Fla. 2005), *Farmsworth v. Proctor & Gamble Co., 758 F.2d 1545, 1548 (11th Cir. 1985), and *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc., 936 F.2d 889, 894 (6th Cir. 1991).

## Conclusion

Based upon the forgoing, Castillo an MD Cleaning respectfully request that this Court quash the Subpoenas in Aid of Execution or enter a protective order prohibiting the taking of

their deposition and production of documents. Alternatively, Castillo an MD Cleaning respectfully request that this Court severely limit the scope of the testimony and documents that are required to be produced to only such documents that may show (although they will not – as no such documents exist) any asset, monies, or thing of value in Castillo or MD Cleaning's possession, custody, or control that were transferred to them by Judgment Debtors within the last two (2) years (as the period of time set forth in the requests for production).

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1 A.3

**WE HEREBY CERTIFY** that a good faith effort was made to confer with opposing counsel in order to proceed without court action, but was unsuccessful. Opposing counsel previously declined the offer from MD Cleaning and Castillo's prior counsel to provide an affidavit in lieu of the Subpoenas in Aid of Execution which required the hiring of the undersigned to prepare the instant motion.

FRANK SIMONE, P.A.
Attorneys for
Castillo and MD Cleaning
701 Brickell Ave., Suite 1550
Miami, Florida 33131
Telephone: (305) 221-8000
Facsimile: (305) 357-2510
Email: frank@franksimone.com

By: _____
FRANK C. SIMONE, ESQUIRE
Florida Bar No. 131814

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 14, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that a true and correct copy of the foregoing was served by electronic notice on counsel for Judgment Creditors, J.H. Zidell, Esq. of J.H. Zidell, P.A. at Zabogaado@aol.com.

FRANK SIMONE, P.A

By: _____
FRANK C. SIMONE, ESQUIRE
Florida Bar No. 131814

**FRANK SIMONE** P.A.
Law Offices

701 BRICKELL AVENUE • SUITE 1550 • MIAMI, FLORIDA 33131 • TELEPHONE (305) 221-8000